Jones, J.
The question presented on this appeal is one of first instance—to what extent, if any, may expert opinion be introduced in actions against an insurer for failure to settle an automobile liability claim within policy limits?
About 5:30 a.m. on July 15, 1962 plaintiff was seriously and permanently injured in a one-car accident when the vehicle in which she was riding as a passenger, owned by defendant’s insured, Esther Ortiz, and driven by the latter’s son, left the highway while traveling at a high rate of speed, causing the death of the driver and the injuries to the sole passenger. In an action subsequently instituted against Mrs. Ortiz in which she was defended by counsel employed by her insurance carrier, defendant herein, plaintiff recovered a judgment in the amount of $60,000—which was $50,000 above the coverage provided to the owner by the automobile liability insurance policy carried by her with defendant. After the insurer had paid plaintiff the $10,000 for which it was obligated under the policy in partial satisfaction of her judgment, Mrs. Ortiz assigned her rights against her insurer to plaintiff. Based on that assignment, plaintiff commenced the present action predicated on the insurer’s alleged bad faith in failing to settle the personal injury action within the policy limits. A jury verdict in her favor has been affirmed by the Appellate Division, two Justices dissenting.
We agree with the court below that the record was sufficient to support the jury’s finding of bad faith by the insurer (cf. Knobloch v Royal Globe Ins. Co., 38 NY2d 471). There is in the record, however, testimony which should not have been received over defendant’s objection and which may well have played a significant part in the jury’s determination. A new trial is therefore required.
At the trial of the action based on alleged bad faith of the insurer, in addition to proof not relevant to our present concern, the parties adduced evidence as to the assertion of plaintiff’s claim against the insured, the investigation and negotiations carried on by the insurer both before and after the claim had been converted to the personal injury action, its engagement of trial counsel and the communications between defendant and its trial counsel prior to and during trial, the defenses relied on and the proof introduced by both sides in *144 the personal injury action, medical reports prepared prior to that trial, trial counsel’s notes and the verdict recovered by plaintiff against the insured. Included was proof that the defenses relied on by the insurer in the underlying action were three: (1) that plaintiff, rather than the insured’s son, was driving the vehicle at the time of the accident, (2) that plaintiff was riding with the son when, to her knowledge, he was intoxicated, so as to have been contributorially negligent, (3) that, by the same conduct, plaintiff had assumed the risk of injury. There was also evidence that plaintiff—a young woman —had sustained substantial physical injuries and had become a permanent hunchback as a result of the accident, which was known to the insurer prior to and during the trial of the personal injury claim; that the highest settlement offer made by the insurer was $7,500 even after the Trial Judge had excluded evidence of the alcohol content of the driver’s blood, on which the insurer had substantially relied to establish his intoxication; and that the trial counsel engaged by the insurer to represent Mrs. Ortiz had not been informed of the limit of the policy coverage until after the trial had been concluded.
As part of her direct case in the present action, plaintiff then called two experienced trial attorneys, neither of whom had had any connection with her personal injury action but whom she qualified and offered as experts in the field of automobile accident injury litigation. The pattern of interrogation and the testimony of these witnesses was substantially the same. First, each was asked to describe the factors he considered in evaluating a personal injury case for settlement. (Both responded, liability and damages.) Objection was interposed by defendant when this question was addressed to the second attorney although not when asked of the first witness. Then followed three hypothetical questions purporting to summarize the evidence offered in the personal injury action as to liability and damages and soliciting from the witnesses their opinions, "with a reasonable degree of professional certainty”, as to the "viability” in this particular case of the defense that the plaintiff was in fact driving the vehicle at the time of the accident, the probability of success on the defenses of contributory negligence and assumption of risk and the likelihood that a verdict returned for plaintiff would exceed $10,000. (The witnesses replied that in the particular circumstances hypothesized the defenses were unlikely to succeed and that the verdict was likely to exceed $10,000, and, on *145 request by plaintiffs counsel, then stated the bases for their conclusions.) Defendant objected to the first of these hypothetical questions when directed to the first witness, on the ground that it was not a matter subject to expert testimony, and to the last hypothetical when addressed to the second witness on the ground the subject was a matter of judgment, not legal opinion.
Each expert was then asked what significance he attached in this instance to the testimony of a Deputy Sheriff who had observed young Ortiz some hours before the accident and had directed plaintiff to drive the vehicle at that time, which testimony had been relied on by the insurer in the personal injury action to support the claim that Ortiz was intoxicated and thus that plaintiff had been guilty of contributory negligence or assumption of risk. (Both witnesses deprecated the value of the testimony, either because of the lapse of time or because of other activities by Ortiz preceding the accident.)
The witnesses were next asked their opinions, again with a reasonable degree of professional certainty, whether $7,500 represented a realistic evaluation of this case for settlement purposes at the conclusion of the proof on the trial, and also whether in general it was possible for an attorney retained by the insurer adequately to represent the interests of an insured sued for an amount in excess of policy limits, if the carrier does not inform that attorney what the policy limits are. (Both witnesses answered both questions in effect in the negative.)
Although argument is available to the contrary, we conclude that sufficient objection was raised to the testimony of both expert witnesses to preserve for our review the errors, if any, committed by the trial court in receiving their opinion testimony. When the first hypothetical question was posed, soliciting the witness’ opinion of the viability of the defense that plaintiff was driving the vehicle at the time of the accident, defendant objected on the ground that the matter was not a proper subject of expert testimony. The objection thus clearly made and overruled served as a continuing objection and made it unnecessary to challenge other improper evidence of the same sort adduced from that witness and the second expert, during whose examination the objection was several times repeated (Dilleber v Home Life Ins. Co., 69 NY 256, 260-261; Schutz v Union Ry. Co., 181 NY 33, 36). Although objection was not made to every question during this line of testimony the objections "were sufficient to cover the *146 whole of the material accepted as evidence” (Macy v New York World-Tel. Corp., 2 NY2d 416, 421).
We conclude that in the circumstances disclosed in this record the testimony of the attorney experts was admissible in part and inadmissible in other part. As stated, for the purposes of the present appeal we proceed on the basis that all errors now asserted were preserved for our review. We observe, however, that because there can properly be no broadly categorical resolution of the issue of admissibility, it would have very much assisted the trial court in making its evidentiary rulings and would have now facilitated our appellate review had the objections been precisely focused and the differentiated supporting reasons been clearly articulated. Because there was no such development on this trial we are now obliged to make what may appear to be a broader and more categorical holding than we would have been disposed to do had there been an appropriate refinement of the issues at the trial level.
In perspective we distinguish between testimony that relates to automobile accident actions in general and testimony that is addressed to the individual action on which this excess liability claim is predicated in particular. We first assume that a proper foundation is laid—i.e., that the witness called to the stand is familiar with the practices of insurers and defendants in evaluating personal injury and property damage claims. Such knowledge may have been acquired in consequence of direct representation of insurers or defendants, or may have come from broader experience in the field of automobile accident litigation which has included substantial exposure to such practices. (No assertion is made here that either of the two attorneys who testified was not qualified by training and experience to express such expert opinion as might be admissible.) On the basis of such foundation the witness should be permitted to identify considerations relevant to the assessment of personal injury claims by insurers in general and then to describe the materiality and weight customarily ascribed to each. So, in this case, the testimony as to factors to be considered in evaluating a personal injury case for settlement was, admissible. It is true that in form the questions were phrased to inquire what factors the witnesses considered, while more precisely the questions should have sought to elicit the factors considered by insurers in general. No objection was taken, however, to the form of the questions, and we conclude *147 that both questioner and witnesses intended that the testimony relate to factors relevant in general rather than in this instance in particular. Similarly, testimony might be introduced which would be descriptive of the practice in settlement of claims followed by insurers in general as well as by their attorneys (see Gordon v Nationwide Mut. Ins. Co., 30 NY2d 427, 444).
This principle, however, would not cover the testimony elicited in response to the hypothetical questions addressed to plaintiff’s expert witnesses. We refer to the testimony as to the "viability” of three defenses interposed by the insurer and the likelihood in this instance of a plaintiff’s verdict in excess of the $10,000 limit of liability under the policy involved in this case. In these instances the questions were focused precisely on this particular case, and did not seek an expression of expert opinion generally with respect to defenses based on intoxication, on contributory negligence, or on assumption of the risk. The attorney witnesses were invited and permitted to express opinions as to the significance of such considerations in this particular case and that the recovery would exceed policy limits. This was far more than a matter of the form of the question and went to the substance of the testimony. In our view in thus presuming to apply general experience to the particulars of this individual case, the witnesses trespassed on the jury’s domain. Accordingly, such testimony was inadmissible and its prejudice to the defendant insurer was in direct proportion to the degree of qualification of the attorney-expert. Likewise we hold that it was error, over what we perceive as a continuing objection, to permit the witnesses to express their individual opinions as to the significance to be attached to the testimony of the Deputy Sheriff with respect to his observations of young Ortiz. In the same category were the opinions expressed as to the penultimate issue before the jury—whether $7,500 represented a realistic evaluation of this particular claim for settlement purposes.
As was recognized by the dissenting Justices in the Appellate Division, estimation as to the probable outcome of the particular personal injury action—a factor bearing on defendant’s performance of its obligation to act in good faith in refusing to settle within policy limits—did not require expert opinion after the testimony given in the personal injury action had been presented to the jury in the bad faith action. The conclusions which might be drawn as to the likely verdict in *148 the former action, and its probable amount, were within the competence of the jury deciding the issue of bad faith. Since those assessments did not "depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence”, there was no occasion to resort to "the knowledge of men whose experience or study enables them to speak with authority” (Dougherty v Milliken, 163 NY 527, 533; People v Kenny, 30 NY2d 154, 157). While it might be suggested that an experienced trial attorney—or even an observant court attendant—who has had frequent occasion to observe the results of juries’ deliberations in personal injury actions might be expected reliably to predict the outcome in a particular case, we know of no empirical support for such a conclusion. Moreover, any such result would be based on exposure rather than expertise, and would treat of subject matter calling for no special scientific or professional education, training or skill. Any experience advantage enjoyed by such witnesses would not establish the inability or incompetence of jurors, on the basis of their day-to-day experience and observation, to comprehend the issues, to evaluate the evidence, and finally, to estimate the likely outcome of a specific action (Ferguson v Hubbell, 97 NY 507, 513-514). Absent such inability or incompetence, the opinions of experts, which intrude on the province of the jury to draw inferences and conclusions, are both unnecessary and improper (Meiselman v Crown Hgts. Hosp., 285 NY 389, 396; People v Creasy, 236 NY 205, 222-223).
We would distinguish the admissiblity of testimony by medical experts as to whether, with a reasonable degree of medical certainty, it could be said that the accident in question was a competent producing cause of the physiological or neurological condition suffered by a particular plaintiff. There the causal linkage involves what is recognized as an area of medical expertise as to which the jury has little if any competence. Applying the same standard, we hold admissible in this case the expert witnesses’ testimony as to the possibility, in general, of adequate representation of an insured by the attorney selected by the insurer if that attorney is not informed of the limits of liability of the pertinent insurance policy. The daily experience of the jurors provides no basis for a determination by them of the relevance of knowledge of policy limits to adequacy of professional representation.
Because of the errors in the admission of evidence, there *149 must be a new trial. Accordingly, the order of the Appellate Division should be reversed and the matter remitted to Supreme Court.