THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
PASQUALE MONTESANO, Appellant.

Fourth Department, January 22, 1982

APPEARANCES OF COUNSEL

*Angelo N. Felice, P.C.* (*Salvador J. Capecelatro, Jr.,* of
counsel), for appellant.

*Charles J. Hynes* (*Arthur G. Weinstein* and *Bonnie H.
Stein* of counsel), for respondent.

OPINION OF THE COURT

DILLON, P.J.

Defendant is a general practitioner of medicine in the
City of Utica. Following a Medicaid fraud investigation, he
was indicted on one count of grand larceny in the third
degree (Penal Law, § 155.30, subd 1) and 20 counts of
offering a false instrument for filing (Penal Law, § 175.35).

Two of the latter counts were dismissed by the trial court and the jury found defendant guilty of all other counts in the indictment. Defendant appeals.

It was the People's claim at trial that from January through May, 1979 defendant stole a sum in excess of $250 by filing with the Department of Social Services false M-20 claim forms which grossly overstated the number of visits had with defendant by Medicaid patients. The M-20 form is a voucher prepared and certified by the physician-provider, and serves as the basis for payment by the Department of Social Services.

■ The principal issue on appeal arises from the testimony of Lynn Foster, an auditor with the Medicaid Fraud Unit, who was offered as an expert witness in accounting and who testified, over objection, as to his findings and conclusions with respect to each of the claims filed by defendant. Defendant argues that the opinion evidence offered by Foster was improperly received because its subject matter did not require expertise; because it impermissibly bolstered the credibility of other witnesses; and because it had the effect of invading the province of the jury. We agree.

The factual issues in this case were not at all complex. At trial, the prosecution offered competent evidence of the Medicaid schedule of charges allowable to a general practitioner for hospital and office visits. There was testimony from 14 Medicaid patients in whose names charges were submitted by defendant on M-20 forms which were received in evidence. The testimony and the documentary evidence thus placed before the jury were sufficient, upon a proper charge by the court, for the jury to make its determinations as to the various counts of the indictment.

Although the simple arithmetic computations required of the jury did not call for the testimony of an expert accountant, receipt of such testimony would not require reversal if it had been limited to a fair mathematical statement not otherwise encroaching upon the province of the jury. Its receipt here was particularly egregious, however, because the expert recounted his findings and conclusions in terms which implicitly expressed his view that defendant was guilty of the crimes charged.

The expert's testimony was premised upon that which the prosecutor, dehors the record, told him was the testimony of each of the 14 patient-witnesses. In detailing his findings as to the claims submitted for services rendered to each patient, the expert's mathematical analysis was based upon the inference most favorable to the prosecution to be drawn from each patient's testimony. More significantly, however, the expert repeatedly concluded that defendant "should not have been paid" or was "improperly paid" for visits which he found "did not occur".

The tenor and quality of Foster's entire testimony is vividly demonstrated in his responses to questions eliciting the broad conclusions to be drawn from his earlier particularized testimony:

"Q Mr. Foster, did you arrive at any findings or conclusions as to the total number of office visits billed for those patients during the five-month period of January through May of 1979?

"A Yes, I have.

"Q Could you tell us the total number of office visits claimed to have occurred?

"A The total number of office and hospital visits claimed were 179.

"Q Could you tell us the total number of office and hospital visits that you allowed?

"A The total number of visits that were allowed was 82.

"Q Can you tell us the total number of office visits you disallowed during that five-month period?

"A I found that there were 97 visits that were not rendered, and were disallowed. I disallowed.

"Q Could you tell us the total dollar amount Dr. Montesano was paid by Oneida County for services allegedly rendered to those patients during the five-month period?

"A Yes, it is $1,081.60.

"Q Could you tell us the total dollar amount that you did allow?

"A Yes, I allowed $498.20.

"Q Can you tell us the total amount that you disallowed for visits that did not occur?

"A I disallowed $582.82 for services not rendered."

There can be no doubt that the expert's testimony was characterized by repeated invasions of the province of the jury (see *People v Higgins,* 5 NY2d 607, 627). "Facts are the appropriate subject of evidence. Inferences and conclusions to be drawn therefrom are for the jury. Opinion evidence is never allowed, except when from the nature of the case the facts cannot be stated in such a manner as to enable the jury to form an accurate judgment therefrom, and no better evidence than such opinions is obtainable." (*People v Creasy,* 236 NY 205, 222.) Put differently, an expert will be permitted to offer an opinion on an issue which involves " 'professional or scientific knowledge or skill not within the range of ordinary training or intelligence' " (*Selkowitz v County of Nassau,* 45 NY2d 97, 102, quoting *Dougherty v Milliken,* 163 NY 527, 533).

Here it was well within the knowledge and experience of jurors to resolve what are conceded by the People to be "simple and straightforward" factual issues. It was for the jury to assess the credibility of the witnesses and to resolve the conflicts between the patients' testimony and that of defendant, who took the stand on his own behalf. Moreover, it is not even asserted by the People that the jury was not competent to evaluate the readily understandable documentary evidence (cf. Richardson, Evidence [Prince, 10th ed], § 574) and to relate that evidence to the witnesses' testimony.

We thus conclude that the trial court impermissibly allowed the expert to bolster the credibility of patient-witnesses (see *People v Ciaccio,* 47 NY2d 431) and to express opinions on the ultimate conclusions to be reached by the jury (*Kulak v Nationwide Mut. Ins. Co.,* 40 NY2d 140, 147; *People v Higgins,* 5 NY2d 607, 627, *supra*). The jury had before it all that it needed to reach its own conclusions and expert opinion was unnecessary and unduly prejudicial (*People v Raco,* 68 AD2d 258). We find no merit to the People's argument that the error was cured by the court's charge.

■ Finally, we address defendant's contention that the trial court erred in failing to marshal the evidence (see CPL 300.10). It may be fairly said that the witness Foster, under the guise of expert testimony, rendered a summation of the People's entire case. Indeed, the trial court acknowledged that "Mr. Foster's testimony marshalled the evidence", an observation which may have led the court to conclude, as it apparently did, that it was unnecessary to marshal the evidence of the patient-witnesses in its charge to the jury. Given the expert witness' highly partisan hearsay evaluation of the testimony of the various patient-witnesses, the court's failure to have marshalled that evidence was particularly prejudicial to the defendant.

Accordingly, the judgment of conviction should be reversed and the defendant should be granted a new trial.

CALLAHAN, DOERR, DENMAN and SCHNEPP, JJ., concur.

Judgment unanimously reversed, on the law, and a new trial granted.