No. 85-498

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

LINDA M. HART-ANDERSON,

        Plaintiff and Respondent,

  -vs-

GERALDINE C. HAUCK and STATE FARM
INSURANCE COMPANY,

    Defendants and Appellants.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Christopher P. Thimsen argued for Hauck, Billings,
Montana
Dzivi, Conklin & Nybo; William Conklin argued for
State Farm, Great Falls, Montana

    For Respondent:

        Crowley Law Firm; Ronald D. Lodders argued, Billings,
Montana

---

Submitted: November 24, 1987

Decided: January 8, 1988

Filed: JAN -8 -1988

Ethel M. Harrison

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Defendants Geraldine Hauck and her insurer, State Farm Insurance Company (State Farm), appeal a Yellowstone County District Court jury verdict and judgment which; (1) found Hauck negligent and 100% liable for an automobile accident involving the respondent/plaintiff Linda Hart-Anderson, (2) found that State Farm had breached its statutory obligations to respondent under Montana's Unfair Claims Settlement Practices Act (the Act), and (3) awarded $687 to respondent for property damages to her car, (4) awarded $25,000 to respondent as compensatory damages for emotional distress, and (5) awarded $687,000 to respondent as punitive damages against State Farm.

A decision was entered by this Court on March 17, 1987. Hart-Anderson v. Hauck (Mont. 1987), 44 St.Rep. 508. Hart-Anderson petitioned this Court for partial reconsideration under Rule 34, M.R.Civ.P. The petition was briefed by the parties and we granted oral argument. We now withdraw the original opinion and issue this opinion in its place.

Appellant State Farm raises the following issues on appeal:

(1) whether the District Court erred in instructing the jury that § 33-18-201(7), MCA, applies to third party claimants;

(2) whether the District Court erred in allowing respondent's expert witness to state legal opinions that State Farm violated the Act;

(3) whether the District Court erred in prohibiting respondent from cross-examining plaintiff's expert witness on his knowledge and interpretation of case law on negligence and rear-end collisions;

(4) whether the District Court erred in instructing the jury that a violation of the Act may be considered as evidence of presumed malice;

2

(5) whether the District Court committed prejudicial error by refusing to bifurcate the trial into a negligence action and a bad faith action;

(6) whether the evidence is sufficient to support the jury's verdict that State Farm breached obligations imposed by the Act;

(7) whether the evidence is sufficient to support the award of $25,000 for emotional distress;

(8) whether the District Court erred in submitting the issue of punitive damages to the jury and whether the punitive damages award of $687,000 is supported by the evidence;

(9) whether the punitive damages award violates State Farm's rights under the excessive fine clause and the due process clause of both the United States and the Montana Constitutions.

Appellant Hauck raises two issues:

(1) whether the District Court erred in instructing the jury that there was no preexisting damage to plaintiff's car;

(2) whether the District Court erred in instructing the jury that, as a matter of law, the actions of another driver had no bearing upon this case.

Because of instructional and evidentiary errors, we reverse the judgment and remand this cause for a new trial.

On the morning of December 6, 1982, plaintiff was driving her car east on Broadwater Avenue in Billings, Montana. Geraldine Hauck was some distance behind the plaintiff also driving east on Broadwater. The streets were very icy that morning. Plaintiff planned to turn right at the corner of Broadwater and Tenth Street. As she approached the corner, a large delivery truck entered the intersection from her right. Plaintiff applied her brakes causing her car to slide to the right. Her car hit the curb and bounced back into her lane of traffic. Plaintiff proceeded very slowly around the corner. Appellant Hauck saw that the plaintiff's

vehicle was having trouble on the icy street. Appellant Hauck also planned to turn right on Tenth Street and she attempted to brake her vehicle to avoid the plaintiff's vehicle in front of her. Hauck testified that she could not avoid plaintiff's vehicle by passing it on the left because of the delivery truck, which was blocking the road on that side. Hauck was unable to slow her car enough to avoid striking the plaintiff's vehicle from the rear. Hauck's vehicle struck the plaintiff's vehicle and pushed it across Tenth Street and into a car driven by Agnes Heald. No one suffered physical injuries.

At the time of the accident, Hauck had an automobile insurance policy with State Farm. Hauck promptly reported the accident to State Farm. On December 17, 1982, the plaintiff submitted her accident report and claim for $687 to State Farm. Plaintiff's initial written accident report did not mention that she had slid into the curb. However, shortly after she filed her report, the plaintiff admitted to State Farm's adjuster, Doyle Hailey, that she did slide into the curb. Hailey told plaintiff that he would only pay 50% of the cost of repairing her car because he believed that she was also negligent. Prior to this offer, Hailey did not interview witness Heald or the police officer who investigated the accident. In late December 1982, Heald filed her accident report and claim with State Farm. Heald did not see the plaintiff's vehicle strike the curb and her report made no mention of that fact.

Plaintiff believed that State Farm should pay 100% of her claim. An attorney called Hailey on behalf of plaintiff and stated that plaintiff was not negligent, that it was clear that Hauck was 100% liable, that the refusal to pay all of plaintiff's damages was unjustified, and that plaintiff would accept a settlement payment of 90% of her damages. In

4

January 1983, Hailey telephoned the attorney, stated that plaintiff was 50% negligent and refused to pay plaintiff 90% of her damages. Plaintiff secured counsel and filed this action alleging that Hauck had been negligent and that State Farm had violated the Unfair Claims Settlement Practices Act.

The District Court held the jury trial in this case in May 1985. Plaintiff's counsel read an agreed statement of facts into the record in the jury's presence. Among other things, the statement said,

> Defendant State Farm Insurance Company has offered to pay 50 percent of plaintiff's damage. This offer was communicated at the time of State Farm's first contact with the plaintiff and has never been increased or decreased.

State Farm's counsel moved to amend the second sentence quoted above. He claimed he had informed plaintiff's counsel that he did not agree to that sentence but that his partner signed the statement (apparently not knowing of the dispute). The plaintiff filed a trial brief which admits that State Farm offered to settle both the bad faith action and the negligence action for a total of $5,000. Therefore, we find that the second sentence quoted above, pertaining to the increase or decrease of the offer, was misleading and should be stricken from the agreed statement of facts upon retrial.

Appellant Hauck introduced evidence at trial of two repair estimates submitted by plaintiff. One estimate was dated October 8, 1982, approximately two months before the accident occurred. That estimate was for $687. The mechanic who prepared that estimate testified that he believed the date on the estimate was mistaken. He also testified that he had previously said, in a statement given to Hailey, that as far as he could remember the estimate was written in October and not in December. The date of plaintiff's other estimate

5

was September 15, 1982, almost three months before the accident occurred. The estimate was for $750. The mechanic who prepared that estimate testified that he did not remember making the estimate but admitted, at his deposition, that as far as he knew the date on the estimate was correct.

The plaintiff called two expert witnesses to testify at trial. Albert Benoit, now retired but previously the branch claims manager for Farmers Insurance Group for 25 years, testified that Hauck was 100% at fault in the accident and that plaintiff was not negligent at all. Benoit testified, without objection, that State Farm 1. violated subsection (4) of the Act by refusing to pay the claim without conducting a reasonable investigation based upon all the available information, 2. violated subsection (6) of the Act by neglecting to attempt in good faith to effectuate prompt, fair and equitable settlement of the claim where liability was reasonably clear, and 3. violated subsection (7) of the Act by compelling plaintiff to institute litigation to recover amounts due by offering substantially less than the amount recovered. Earl Hanson, an experienced Billings attorney, also testified as an expert witness. Hanson testified that Hauck was clearly 100% negligent and that the plaintiff was not negligent in the accident. He further testified, over objection, that State Farm agents violated subsections (6), (7) and possibly (4) of the Act in the way they handled plaintiff's claim.

Counsel for State Farm attempted to cross-examine Hanson as to case law involving negligence and rear-end collisions. After plaintiff's objection, the District Court refused to allow this cross-examination. Counsel for State Farm made an offer of proof citing two Montana Supreme Court cases, cases from Texas, Tennessee, and California, and several Montana District Court cases.

6

Plaintiff also called Thomas Poindexter, an eye witness, to testify at trial. He testified that the delivery truck was a contributing factor to plaintiff hitting her brakes and sliding into the curb. He also testified that if plaintiff had not applied her brakes because of the truck, causing her to slide into the curb and come almost to a stop, that the accident would not have occurred.

The District Court instructed the jury, over State Farm's objection, that subsection (7) of the Act applied to and protected any person, rather than only insureds. The District Court also instructed the jury, over objection, that the jury could consider a violation of the Act as evidence of presumed malice. The jury returned the verdict described above. This appeal followed.

The first issue concerns the court's instruction to the jury relative to subsection (7) of the Act. Section 33-18-201, MCA (the Act), states in pertinent part:

> No person may, with such frequency as to indicate a general business practice, do any of the following:
>
> . . .
>
> (4) refuse to pay claims without conducting a reasonable investigation based upon all available information;
>
> . . .
>
> (6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;
>
> (7) compel insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

7

. . .

(9) attempt to settle claims on the basis of an application which was altered without notice to or knowledge or consent of the insured;

(10) make claims payments to insureds or beneficiaries not accompanied by statements setting forth the coverage under which the payments are being made;

(11) make known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

(12) delay the investigation or payment of claims by requiring an insured, claimant, or physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss of forms, both of which submissions contain substantially the same information;

. . .

Regarding subsection (7) of the Act and over appellant's objection, the trial court instructed the jury that:

[N]o insurance company may, with such frequency as to indicate a general business practice, do any of the following: . . . Compel any person to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions. (Emphasis added.)

We set out the above subsections of the Act to demonstrate that the Act, by its own terms, provides certain protections to insureds, others to claimants and insureds,

and another to insureds and beneficiaries. See Royal Globe Ins. Co. v. Superior Court, etc. (Cal. 1979), 592 P.2d 329, 334.

Using the analysis for statutory construction cited by this Court in Klaudt v. Flink (Mont. 1983), 658 P.2d 1065, 1067, 40 St.Rep. 64, 66, we find that subsection (7) of the Act does not protect third party claimants. The first step of the analysis is whether our interpretation is consistent with the statute as a whole. As stated, the statute extends some protections to insureds, some to insureds and claimants, and another to insureds and beneficiaries. Our interpretation is consistent with these distinctions clearly made in the statute. The second step is whether our interpretation reflects the legislature's intent considering the plain meaning of the statutory language. The language of subsection (7) protects "insureds" and plainly that term does not include third party claimants who are not insured by the defendant insurance company. The third step is whether the interpretation is reasonable so as to avoid absurd results. The statute here distinguishes between claimants, insureds and beneficiaries. Our interpretation here recognizes and defers to that distinction. As this Court stated in Klaudt, 658 P.2d at 1067, in holding that subsection (6) of the statute does protect third party claimants,

> It would be absurd to assume that the legislature would insert these words into the statute without them having some meaning, as the legislature is presumed not to pass useless or meaningless legislation.

Plaintiff incorrectly asserts that the Klaudt Court held that § 33-18-201, MCA, in its entirety, applies to, and protects third party claimants. The Klaudt Court addressed

9

only subsection (6) of the statute. We hold that the District Court committed reversible error in instructing the jury that subsection (7) of the statute applied to any person.

Our interpretation of subsection (7) of the statute is supported by Green v. Holm (Wash.App. 1981), 622 P.2d 869. In Green, the court addressed a Washington administrative regulation on unfair insurance practice which was almost identical to § 33-18-201(7), MCA. The court found that the plaintiffs could not successfully state a claim under the regulation because they were third party claimants, not insureds. The Washington Supreme Court has since held that a third party claimant has no cause of action against an insurance company for unfair claims settlement practices. Tank v. State Farm Fire & Cas. Co. (Wash. 1986), 715 P.2d 1133.

The second issue is the propriety of the expert witness testimony. Appellants objected to attorney Hanson's opinion testimony that State Farm violated various subdivisions of the statute. Relevant Montana Rules of Evidence are:

> Rule 702. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
>
> . . .
>
> Rule 704. Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

The Commission Comment to Rule 704, M.R.Evid., provides that:

> [T]he Commission intends this rule to follow the existing Montana practice of not allowing the witness to give a legal conclusion or to apply the law to the facts in his answer.

Additionally, § 25-7-102, MCA, provides that:

> [A]ll questions of law, including . . . the construction of statutes and other writings, . . . are to be decided by the court . . . and all discussions of law are to be addressed to the court.

With this statutory framework in mind, we examine case law bearing on the issue presented. In Safeco Ins. Co. v. Ellinghouse (Mont. 1986), 725 P.2d 217, 43 St.Rep. 1689, this Court recently addressed the plaintiff's use of expert legal testimony in an insurance bad faith case. In Safeco, Ellinghouse was originally sued in a negligence action. Safeco, his insurer, initially accepted coverage of the claim and retained counsel to represent him. Over a year later, Safeco determined that an insurance policy exclusion applied to the claim and that there was no coverage under the policy. Safeco secured Ellinghouse's signature on a "non-waiver" agreement and, a month later, formally denied coverage to Ellinghouse. Ellinghouse later secured his own counsel and settled the negligence claim out of court. Meanwhile, Safeco had filed a declaratory judgment action to determine whether Ellinghouse had liability coverage under the policy. Ellinghouse counterclaimed against Safeco for, among other things, bad faith. Ellinghouse introduced expert legal testimony that:

> [I]t was a general principle of law that prejudice was always presumed to exist whenever a representation of coverage had been made and a defense provided, that the "courts are quite unanimous in saying that insurance companies must either deny coverage immediately or thereafter be

11

> estopped from doing so," and that the
> "completed operations" exclusion had "no
> application" to this case.

Safeco, 725 P.2d at 224. There was also apparently expert legal testimony on what Safeco's legal duties were in the case, on what the legal effect of the non-waiver agreement was, and that Safeco wrongfully denied coverage. This Court held that such testimony was not reversible error under the unique facts of that case, given that the trial court held there was coverage as a matter of law. However, this Court said, "[a]s a general rule, an attorney cannot advise the jury as to the law of the case." Safeco, 725 P.2d at 225.

The Second Circuit Court of Appeals in Marx & Co., Inc. v. Diners' Club, Inc. (2d. Cir. 1977), 550 F.2d 505, stated reasons which help explain the general rule later cited in Safeco. In Marx, the court held that the federal district court erred in permitting an expert witness to give his opinion as to the parties' legal obligation under a contract for registration of stock. Among other things, the expert opined (1) that the defendant had no legal excuses for nonperformance and (2) as to what was required of the defendant under the "best efforts" obligation under the contract. In condemning the testimony, the federal court stated:

> [S]uch testimony "amounts to no more than an expression of the [witness'] general belief as to how the case should be decided." McCormick on Evidence, § 12 at 26-27. The admission of such testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case. McCormick on Evidence, § 12 at 27. It is for the jury to evaluate the facts in the light of the applicable rules of law, and it is therefore erroneous for a witness

12

to state his opinion on the law of the forum. (Citation omitted.)

Marx & Co., Inc., 550 F.2d at 510. The court further cautioned that,

> [W]e must be especially careful not to allow trials before juries to become battles of paid advocates posing as experts on the respective sides concerning matters of domestic law.

Marx & Co., Inc., 550 F.2d at 511.

Here, the jurors had the ability and the competence, based upon their common experiences and knowledge, to decide whether (1) State Farm refused to pay plaintiff's claim without conducting a reasonable investigation based upon all available information; and (2) State Farm neglected to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim in which liability had become reasonably clear. Hanson's challenged testimony, opining that State Farm violated subsections (4), (6) and (7) of the Act invaded the province of the jury and simply instructed the jury how to decide the case. That testimony was highly prejudicial to State Farm and, therefore, we hold that the District Court committed reversible error in admitting Hanson's legal opinions.

Appellants did not object to the respondent soliciting legal opinions from Benoit and we do not here address the propriety of that testimony. For a further discussion of expert legal testimony, see Kulak v. Nationwide Mutual Insurance Company (N.Y. 1976), 351 N.E.2d 735.

The third issue concerns the District Court's ruling restricting State Farm's cross-examination of attorney Hanson. By way of qualifying Hanson as an expert legal witness, plaintiff elicited Hanson's testimony that he has practiced law for almost twenty years, that he has given

13

speeches to professional organizations on topics including bad faith and insurance bad faith, that he had worked in the insurance business and that he was generally familiar with the principles of evaluating liability in rear-end car crashes. On cross-examination, Hanson agreed that he tries to read this Court's decisions soon after they are decided and that the law in most states is similar to Montana law with regard to rear-end collision and liability.

State Farm's counsel then attempted to cross-examine Hanson about an Idaho case reported in the Pacific Reporter and about a Texas Court of Civil Appeals case. Counsel sought to show through these cases that the following driver in rear-end collision cases is not always 100% liable. The District Court sustained plaintiff's objection to this line of questioning. State Farm then made an offer of proof that various cases demonstrated that in rear-end collisions similar to the instant case the following driver was not 100% liable. The cases included reported cases from Montana, California, Idaho, Texas and Tennessee, Montana District Court decisions, and cases where Hanson's law firm took positions allegedly inconsistent with his testimony on negligence. The court refused to allow State Farm to use any of these cases in cross-examination. The record demonstrates that State Farm's attempted use of case law was designed, at least in part, to test attorney Hanson's expertise.

This Court has zealously guarded the right of cross-examination. In this regard, we have stated:

> Rule 705, Mont.R.Evid., mandates that the opinion of a qualified expert is admissible, and if opposing counsel believe the opinion is not founded on sufficient data, cross-examination is the shield to guard against unwarranted opinions.

14

Stewart v. Casey (1979), 182 Mont. 185, 193, 595 P.2d 1176, 1180.

> The right of cross-examination may not be unduly restricted and may extend not only to facts stated by the witness in his direct examination, but to all other facts connected with them which tends to enlighten the jury upon the question in controversy.

State Highway Commission v. Bennett (1973), 163 Mont. 386, 391, 513 P.2d 5, 8.

We hold that the District Court erred in precluding the cross-examination of Hanson on the Montana decisions, both Supreme Court and District Court, and on the cases involving Hanson's law firm. Appellants were entitled to test the knowledge, competency and qualifications of the expert witness. We do not rule on the use of foreign decisions as a District Court may properly exclude their use if they present evidence only repetitive or cumulative to evidence abducted from Montana cases. In sum, we find that Montana cases are preferred in cross-examination of this kind, especially where the expert witness has conceded his familiarity with Montana law.

The fourth issue concerns the District Court's instructions on presumed malice. The court gave instruction number 27 stating:

> You are instructed that when a person knows or has reason to know of facts which create a high degree of risk of harm to the substantial interests of another, and either deliberately proceeds to act in conscious disregard of or indifference to that risk, or recklessly proceeds in unreasonable disregard of or indifference to that risk, his conduct meets the standard of willful, wanton, and/or reckless to which the law of this

15

> State will allow imposition of punitive
> damages on the basis of presumed malice.

That standard is a correct statement of the law under Owens
v. Parker Drilling Co. (Mont. 1984), 676 P.2d 162, 41 St.Rep.
66. The controversy here arises from the court's instruction
number 29, which states:

> If you find that State Farm Insurance
> Company has violated the Unfair Claims
> Settlement Practices Act, then such
> violation may be considered by you as
> evidence of presumed malice, as that term
> is defined in these instructions.

State Farm argues that this instruction allows the jury to
disregard the Owens standard and predicate a finding of
presumed malice upon a statutory violation alone. We agree.
Conceivably, a jury could use the challenged instruction to
perform an "end-run" around the Owens standard for presumed
malice. Moreover, the Owens Court addressed the newly
formulated standard for presumed malice and stated:

> The standard is equally applicable to
> statutory violations and other wrongful
> conduct. Thus, where a statute is
> designed to protect the substantial
> interests of a person from a high degree
> of risk, and the statute is violated
> either intentionally or recklessly, a
> jury question of punitive damages is
> raised. (Emphasis in original.)

Owens, 676 P.2d at 165. Owens requires an intentional or
reckless statutory violation for the issue of punitive
damages to go to the jury. The instruction here allows the
jury to consider a statutory violation as evidence of
presumed malice. Thus, the jury could find that State Farm
had negligently violated the Unfair Claims Settlement
Practices Act and they could further consider that negligent
violation as evidence of presumed malice. That is not the

16

law under <u>Owens</u>. We hold that the District Court erred in giving instruction number 29.

The fifth issue is whether the District Court should have bifurcated this trial into a negligence action and a bad faith action. Given our holding today, we need not address the propriety of the District Court's refusal to bifurcate. Upon retrial, this action will be bifurcated and tried in accordance with our decision in Fode v. Farmers Ins. Exchange (Mont. 1986), 719 P.2d 414, 43 St.Rep. 814.

Because we remand this cause for a new trial on all issues, we decline to address issues six, seven, eight and nine listed above and the two issues raised by appellant Hauck.

Reversed and remanded.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

17

Mr. Justice John C. Sheehy, dissenting:

This reversal is a follow-up from the unfortunate decision of this Court in Safeco Ins. Co. v. Ellinghouse (1986), 725 P.2d 217, 43 St.Rep. 1689. This reversal evinces a growing elitist philosophy on this Court, a distrust of juries which bodes no good for insurance claimants in this state.

We begin with the flat statement that Geraldine C. Hauck was 100% negligent in causing the accident. The jury said so. A. G. Benoit, a top flight adjuster for one of the largest underwriting concerns in Billings said so. Earl Hanson, an attorney representing both insurance companies and both insurance claimants, said so. This Court said so in McDonough v. Smith under facts nearly identical:

> Defendant contends, however, that his evidence tended to show that the damage to plaintiff's car was caused by plaintiff's own negligence. True, the answer of the defendant contained such a charge, but there is an entire absence of any evidence to support such allegation. Under the record presented here, the jury would not have been warranted in finding for the defendant on any theory, except that his car did not strike that of plaintiff. There was no evidence from which the jury could have determined that the damage to plaintiff's car resulted from any other cause than that it was struck by the defendant. If they could have found that the cars did not collide, then the reason why plaintiff's car struck the fence resulting in the damage complained of would have rested in conjecture and speculation.

McDonough v. Smith (1930), 86 Mont. 545, 551, 284 P. 542, 544.

The jury verdict answered the following questions:

1. Do you find that Defendant Mrs. Hauck was negligent and that her negligence was a proximate

- 18 -

cause of the property damage suffered by the Plaintiff, Linda Hart-Anderson? Yes __X__

2. Do you find that Plaintiff Linda Hart-Anderson, was negligent, and that her negligence was a proximate cause of the property damage she suffered? No __X__

3. If your answer to both 1 and 2 was "yes" then assign a percentage to each of them apportioning the negligence which proximately caused the accident between them in the following blanks:

Mrs. Hauck _____100%_____

Mrs. Hart-Anderson _____0%_____

4. What is the amount in dollars of damage to Mrs. Hart-Anderson's car which was caused by this accident? __$687.00__

5. Did State Farm Insurance Company breach the obligations imposed by the Unfair Claims Settlement Act of Montana as given to you in the instructions? Yes _____X_____

6. Did such breach proximately cause damage to Linda Hart-Anderson? Yes __X__

7. What is the dollar amount of damages suffered by Linda Hart-Anderson for emotional distress as defined in these instructions, if any? $25,000.00

8. Is Linda Hart-Anderson entitled to receive punitive or exemplary damages from State Farm Insurance Company under the instructions given you on punitive or exemplary damages? Yes __X__

If "yes" then in what amount? __$687,000.00__

Under § 33-18-201, MCA, it is an unfair claims settlement practice for an insurance company to fail to acknowledge and act reasonably promptly upon communications with respect to claims under insurance policies; to refuse to pay claims without conducting a reasonable investigation based upon all available information; to neglect to attempt in good faith to effectuate prompt, fair and equitable

- 19 -

settlements of claims in which liability has become reasonably clear; and to compel insureds to institute litigation and recover amounts due by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.

The majority opinion takes umbrage in finding that the District Court instructed the jury that an insurance company should not compel any person, and not just insureds, to institute litigation in order to recover what is justly due that person. The majority finds that the legislature did not "intend" to so protect third party claimants, but only intended to protect "insureds." I submit that such intent is not what is to be deduced from the whole of § 33-18-201, MCA, which in broad and repetitive language steps out to protect Montana persons dealing with insurance companies, both insureds and third party claimants. What legislative intent can be distinguished as different when the legislature provides that it is not good faith if the insurer neglects to effectuate prompt, fair and equitable settlements and also provides that insureds should not be forced to go to court to collect their due claims? If an insurance company neglects to effectuate prompt, fair and equitable settlement of claims where liability has become reasonably clear, is it not simply an extension of that neglect to compel third party claimants to go to court or else accept less than is due them? The ignominious result of the majority opinion is that now the District Court cannot instruct the jury that it is bad faith for an insurer to force a third party claimant to go to court to collect his claim, even though by so doing, the insurer "neglects to attempt in good faith to effectuate prompt, fair and equitable settlements" and fails "to acknowledge and act reasonably promptly upon communications with respect to claims." The kind of nitpicking indulged by the majority in

determining the legislative intent of § 33-18-201(7), MCA, confounds the intent and purpose of the statute.

The majority objects to the statement of the District Court, read to the jury that:

> Defendant State Farm Insurance Company has offered to pay 50% of plaintiff's damage. This offer was communicated at the time of State Farm's first contact with the plaintiff and has never been increased or decreased.

The statement read by the District Court is absolutely true. It was the refusal of the insurance company to recognize its 100% obligation for the plaintiff's damages that brought about the lawsuit. That is what the District Court was informing the jury. It would have been improper for the District Court to read to the jury a statement that later the insurer tried to settle both the bad faith action and the negligence action for a total of $5,000. The latter figure was simply an offer of compromise which would be inadmissible in any event.

Two things may be said with respect to the majority opinion and its treatment of the Earl Hanson testimony. First, all of the things to which Hanson testified were also testified to by the lay insurance adjuster, A. G. Benoit. No objection was made on appeal to the testimony of A. G. Benoit. Yet, this Court reverses on the testimony given by Earl Hanson, which is clearly compatible with the unobjected-to testimony of A. G. Benoit.

Second, the cross-examination of Earl Hanson as proposed by the insurer's attorney was properly denied by the District Court. Allowance of such cross-examination would have meant that the jury would be trying not only the facts of this case but the facts in other reported cases in this state and other states which were not relevant to the issues presented here. The District Court should be sustained in its statement which

in essence told the insurer's attorney that the jury in this case was going to try one set of facts and one set of facts only.

The majority objection to the giving of court's instruction no. 29, set forth in the majority opinion, is only further quibbling. Instruction no. 29 has to be read in conjunction with instruction no. 27. Instruction no. 29 merely told the jury that violations of the Unfair Claims Settlement Practice Act could be considered by them as evidence of presumed malice, "as that term is defined in these instructions." (Emphasis added.) Instruction no. 27 told the jury that if the defendant "recklessly proceeds in unreasonable disregard or indifference to [the] risk [of harm], his conduct meets the standard of willful, wanton and/or reckless to which the law of this State will allow imposition of punitive damages on the basis of presumed malice." The two instructions read together state the law. There is no question that the insurer in this case proceeded deliberately and intentionally to refuse to pay the full damages to which Linda Hart-Anderson was entitled. The majority would require the jury to attempt to determine punitive damages in a vacuum without consideration of the violations of the Unfair Claims Settlement Practice Act. That requirement is absurd.

The majority have withdrawn from their original opinion their comment on instruction no. 30. The court in this case properly instructed the jury, in instruction no. 30:

> More than one person may be responsible for causing injury. If you find that the defendant, Geraldine Hauck, was negligent and that her negligence proximately caused the plaintiff's property damage it is not a defense that some third person may also have been negligent.

It was following instruction no. 30, that the court gave instruction no. 31, which stated:

> You are instructed that the actions of the driver
> of the Consolidated Freightways truck have no
> bearing upon this case as a matter of law. That is
> to say, the liability, if any, of Geraldine Hauck
> for the damage to Linda Hart-Anderson's car is not
> reduced or eliminated by the fact that the driver
> of the Consolidated Freightways truck may also have
> been at fault.

Those instructions, read together properly state the law of this case. Consolidated Freightways was not a party to this action. Under the theory of joint and several liability, Geraldine Hauck, if liable, was liable for all of that portion of negligence that the jury assigned to her. In that light, jury instruction no. 30 was perfectly proper and should be given again on retrial with instruction no. 31.

More than ever, this case points up the necessity of this Court examining the duty of insurance companies toward third party claimants in the light of the mandatory insurance law. Section 61-6-301, MCA. As I pointed out in my dissent in Fode v. Farmers Insurance Exchange (Mont. 1986), 719 P.2d 414, 419, 43 St.Rep. 814, 820, the purpose of the mandatory insurance law is to protect third party motorists on our highways. The duty of the insurer to protect third party claimants and not harass them or refuse to pay their just claims is of greater import under mandatory insurance laws. The rights of the third party claimant now in automobile accident cases arise not merely through the insurance contract between the other motorist and his company but through the determination of the legislature that the general traveling public is to be protected. It is worth repeating the statement in Ferguson v. Employers Mutual Cas. Co. (S.C. 1970), 174 S.E.2d 768, 771:

> The primary purpose of a compulsory motor vehicle
> liability insurance is to compensate innocent
> victims who have been injured by the negligence of
> financially irresponsible motorists. Its purpose
> is not like that of ordinary liability insurance to

> save harmless the tort feasor himself. The injured person's rights against the insurer are not derived through the insured as in the case of voluntary insurance. They are statutory and become absolute on the occurrence of an injury covered by the policy. (Citation omitted.)

In the absence of federal regulation of insurance companies' settlement practices, and the incomplete and limited statutory reach of state regulation, this Court has a duty to protect motorists from the unfair practice that was exhibited by State Farm in this case. Damages of $687 may not loom large in the state's economy, but are important to the person involved. If the person involved has a choice of either 50% of his damages or going to court, it is more than likely that going to court will be out of the question because of the upfront costs that are necessary. The protection of Linda Hart-Anderson for one-half of $687 may not seem terribly important, but the multiplication of Linda Hart-Andersons by several hundred throughout the State of Montana every year has substantial importance. The jury decided not to condone this business practice of State Farm Mutual. The jury took a proper course in awarding punitive damages. It is a regrettable action for this Court to set aside that award for the flimsy reasons given.

_____
Justice

Mr. Justice William E. Hunt, Sr.:

I concur in the foregoing dissent of Mr. Justice Sheehy.

_____
Justice