OPINION OF THE COURT
Robert J. Miller, J.
*426 In this pretrial motion in limine, the defendants Corestaff Services L.E and Edwin Medina (defendants) move to preclude plaintiffs expert witness from testifying regarding plaintiffs witness Ronald Armstrong’s submission to and the results of a functional magnetic resonance imaging (fMRI) test.
Plaintiff Cynette Wilson opposes the motion and cross-moves to
“be allowed a Frye Hearing concerning, the results of functional Magnetic Resonance Imaging testing which indicate that the witness Ronald K. Armstrong is being truthful when he states that defendant Edwin Medina told him not to place plaintiff Cynette Wilson in temporary work assignments because she complained of sexual harassment.”
Wilson disclosed pursuant to CPLR 3101 (d) her intent to call an expert, Steven Laken, Ph.D., president and CEO of Cephos Corporation. The intention is to use Laken as an expert to testify that Armstrong was not lying because the fMRI could show “to a very high probability” that Armstrong “is being truthful when he testifies.”
Essentially, plaintiff seeks to utilize the fMRI test to bolster the credibility of a key witness in this case. Plaintiff Wilson asserts a claim under the New York City and New York State Human Rights Laws that she was retaliated against by the defendants after she reported an inappropriate action by a fellow employee at the work site. The defendant Corestaff is a temporary employment agency that placed Wilson at an investment banking firm (the Bank). While on assignment, an employee of the Bank faxed an offensive nude photo to the plaintiffs workstation. Wilson reported the incident to both Corestaff and the Bank. Armstrong is the only witness who will testify as to an alleged retaliatory statement made by Corestaff employee Medina. As such, his credibility is a key issue in the case.
The admissibility and limits of expert testimony are primarily in the discretion of the trial court. (People v Wiggins, 89 NY2d 872 [1996].) Frye v United States (293 F 1013 [DC 1923]) is the seminal case followed by New York courts in determining the admissibility of scientific evidence at trial. (People v Wernick, 89 NY2d 111 [1996]; People v Wesley, 83 NY2d 417 [1994].)
A review of the facts in Frye demonstrates that attempts by parties to bolster the credibility of witnesses is a not recent development. In Frye, a 1923 case, a defendant in a criminal *427 trial wanted to use an expert witness to testify to the result of a “deception test” made upon the defendant. The “deception test” measured systolic blood pressure which allegedly is influenced by change in the emotions of the witness. The Frye court summarized the theory as follows:
“In other words, the theory seems to be that truth is spontaneous, and comes without conscious effort, while the utterance of a falsehood requires a conscious effort, which is reflected in the blood pressure. The rise thus produced is easily detected and distinguished from the rise produced by mere fear of the examination itself. In the former instance, the pressure rises higher than in the latter, and is more pronounced as the examination proceeds, while in the latter case, if the subject is telling the truth, the pressure registers highest at the beginning of the examination, and gradually diminishes as the examination proceeds.” (293 F at 1014.)
The Frye court refused to allow the testimony of the expert as to the results of the deception test. The court found: “We think the systolic blood pressure deception test has not yet gained such standing and scientific recognition among physiological and psychological authorities as would justify the courts in admitting expert testimony deduced from the discovery, development, and experiments thus far made.” (Id.)
New York courts have restated and followed the principles of Frye and set forth a test as to the admissibility of expert testimony relating to scientific theory. New York courts permit expert testimony if it is based on scientific principles, procedures or theory only after the principles, procedures or theories have gained general acceptance in the relevant scientific field, proffered by a qualified expert and on a topic beyond the ken of the average juror. (People v LeGrand, 8 NY3d 449 [2007].)
Apparently, there is no reported case in New York or in the rest of the country which deals with the admissibility of the results of fMRI testing. The court inquired of counsel for both parties if they were aware of any reported cases and both advised that this is a case of apparent first impression. However, long established precedent under Frye as well as long established principles of jurisprudence provide the court with ample precedent and guidelines.
As the Court of Appeals noted in People v Williams (6 NY2d 18 [1959]), rejecting the use of an expert who was to testify as to the alleged lack of credibility of heroin addicts:
*428 “But the expert testimony preferred here is not usual at all. It is not as to a fact in issue, as such, but as to a collateral matter, viz., the credibility of a witness. Credibility is, as the cases have repeated and insisted from the dawn of the common law, a matter solely for the jury. Cases frequently turn upon what credence the jury gives to a particular witness. In a case such as this where only one witness has testified to the crime, the case stands or falls according to the jury’s opinion of his credibility . . .
“How complex and confusing would a trial become for the jury if it were faced with conflicting expert opinions, each with scientific authority to support it, upon the collateral matter of credibility. The first question would be the credibility of the experts, and then the credibility of the witness. The battle of the experts might well be such that the jury would lose sight of the issues or, at the very least, would tend to regard the opinion of the expert as determinative of the credibility of the witness rather than to consider it only as one factor of many to be considered in concluding whether a witness is telling the truth.” (Id. at 26-27.)
As the Williams court observed, our common-law tradition provides that credibility is a matter solely for the jury. Anything that impinges on the province of the jury on issues of credibility should be treated with a great deal of skepticism.
It is for this reason that courts have advised that the threshold question under Frye in passing on the admissibility of expert testimony is whether the testimony is “within the ken of the typical juror.” (People v Cronin, 60 NY2d 430, 431 [1983].) Expert testimony offered to bolster the credibility of a fact witness has been appropriately excluded. (Water Wheel Inn v Exchange Ins. Co., 261 AD2d 535 [2d Dept 1999].) Furthermore, it is well established that unless the jurors are unable or incompetent to evaluate the evidence and draw inferences and conclusions, the opinion of an expert which intrudes on the province of the jury is both unnecessary and improper (Kulak v Nationwide Mut. Ins. Co., 40 NY2d 140 [1976]). Expert testimony is proper only when it would help to clarify an issue calling for professional or technical knowledge possessed by the expert and which is beyond the ken of the typical juror. (De Long v County of Erie, 60 NY2d 296 [1983].) The proffered *429 fMRI test is akin to a polygraph test which has been widely rejected by New York State courts. (People v Shedrick, 66 NY2d 1015 [1985]; Water Wheel Inn v Exchange Ins. Co., 261 AD2d 535 [1999].)
Here the opinion to be offered by Laken is of a collateral matter, i.e., the credibility of a fact witness. Since credibility is a matter solely for the jury and is clearly within the ken of the jury, plaintiff has failed to meet this key prong of the Frye test and no other inquiry is required.
However, even a cursory review of the scientific literature demonstrates that the plaintiff is unable to establish that the use of the fMRI test to determine truthfulness or deceit is accepted as reliable in the relevant scientific community. The scientific literature raises serious issues about the lack of acceptance of the fMRI test in the scientific community to show a person’s past mental state or to gauge credibility.
Accordingly, defendants’ motion in limine to exclude the testimony of the fMRI expert is granted and plaintiffs motion for a Frye hearing is denied.