No. 90-153

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

DONALD D. CECIL,

      Plaintiff and Appellant,

  -v-

CARDINAL DRILLING COMPANY, a
Colorado Corporation,

      Defendant and Respondent.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Maurice R. Colberg, Jr., Judge
presiding.

COUNSEL OF RECORD:

      For Appellant:

          Susan Fisher Stevens and Virginia A. Bryan; Wright,
Tolliver & Guthals; Billings, Montana

      For Respondent:

          David A. Veeder; Veeder & Broeder, Billings, Montana

Submitted on Briefs: July 20, 1990

Decided: September 6, 1990

Filed:

Clerk

FILED
'90 SEP 6 AM 10 58
ED SMITH, CLERK
MONTANA SUPREME COURT

Justice R. C. McDonough delivered the Opinion of the Court.

Plaintiff Donald Cecil (Cecil) appeals the order of the Montana Thirteenth Judicial District Court, Yellowstone County, granting summary judgment to the defendant, Cardinal Drilling Company (Cardinal) on Cecil's claim of wrongful discharge. The Court granted summary judgment to Cardinal on the grounds that there were no facts to dispute that Cecil's termination was for other than legitimate business reasons. We affirm.

Cecil raises a sole issue on appeal:

Did the District Court err in granting summary judgment to Cardinal on Cecil's claim of wrongful discharge under §39-2-904(2), MCA?

Cardinal is a subsidiary of Ocelot Industries, a Canadian corporation. Cecil, age 57, was recruited and hired in 1981 by Otto Jensen, who acted as Cardinal president until January 1988. When Jensen announced his plans to retire in December of 1987, an Ocelot employee, Bill Kelsay, informed Cecil that as the highest ranking employee after Jensen, he would likely be the next president of Cardinal. However in January, 1988, Kelsay hired Kurt Burris, former president of a competing drilling company, as president instead.

Ocelot informed Cecil that he was not named as president because he would have attempted to do all the work by himself and that it would take two people to carry out Ocelot's plans for Cardinal's future. Kelsay asked Cecil to stay on and help Burris run the company and promoted him to executive vice president.

2

Kelsay allegedly told Cecil that Ocelot planned to infuse additional capital into Cardinal and that he expected great things for Cardinal and Cecil in the upcoming year.

In early 1988, after rumors concerning Ocelot's solvency, Kelsay came to Billings to reassure Cardinal employees that their jobs were secure. In April Burris gave all Cardinal employees raises, including Cecil. Burris allegedly informed Cecil that he was pleased with his work and that Cecil would get more raises later. In May 1988, Burris prepared a revised budget for Cardinal, budgeting upward because it looked like it would be a good year for Cardinal.

During the first months of Burris' presidency at Cardinal Cecil alleges that he worked diligently to familiarize Burris with the operations of Cardinal and ease Burris into his new position. Cecil alleges that by July of 1988, he had familiarized Burris with most, if not all, of his personal knowledge relating to Cardinal marketing activities.

Cecil alleges that on July 18, 1988, he was summoned into Burris' office and told without any prior warning or other indication of poor performance by him or the company, that he was being terminated. He alleges that he was told that his termination was effective immediately but that he might be given some severance pay. Cecil alleges that when he went to pick up his final paycheck Burris offered him an additional check for severance pay, conditioned upon Cecil signing a release of any claims against Cardinal. Later Burris presented a second release drafted by an

3

attorney. Cecil declined to sign either release and has never received any severance pay.

Between July and December of 1988, Burris gave the remaining salaried staff of Cardinal in Billings an additional raise. At the end of 1988, Cardinal gave its field employees cash bonuses. Cardinal was able to meet its expenses through its own revenues in 1988. In March, 1989 within eight months of Cecil's termination, Cardinal spent $225,000.00 to expand its drilling operations and allegedly hired a new employee for marketing and bidding, with duties identical to Cecil's.

Another Cardinal employee, the safety director, was terminated at the same time as Cecil. Unlike Cecil, who had no performance deficiencies on his record, the safety director had recently been cited for DUI in an accident involving a company vehicle in a bar parking lot.

Burris claims that an anticipated decline in the price of crude oil was the reason for terminating Cardinal employees. Some time in the spring of 1988 Kelsay of Ocelot discussed making expenditure cuts with Burris, although termination of employees was not discussed at this time. During this downturn Ocelot itself terminated approximately 100 people. In July of 1988, Burris discussed with Kelsay his plans to terminate Cecil.

The price of crude oil did fall dramatically as Burris predicted; local and world oil prices fell sharply in 1988 beginning in April with a temporary rebound in July, and then resumed their downward trend until December 1988. Based on this

4

trend, the District Court found that there was no genuine issue of material fact regarding the reason for Cecil's termination. Furthermore, at the time Cecil's job was terminated Cecil largely admits that crude oil prices were falling. The court also noted that the number of drilling rigs operated by Cardinal is directly related to the price of crude oil.

The District Court stated there was nothing in the record to suggest that Burris gained any pecuniary benefit from terminating Cecil. The Court further noted there was no evidence that Burris' intended to harm Cecil; Cecil himself testified in his deposition that he and Burris had only a business relationship and had no problems in that relationship. While Cecil claims to have been wrongfully discharged, he offers no other specific reason for his termination to contradict that he was terminated for economic reasons.

At the time Cecil filed suit on September 29, 1988, his complaint included a count requesting declaratory judgment on the constitutionality of the Wrongful Discharge from Employment Act, a count alleging tortious breach of the implied covenant of good faith and fair dealing and a corresponding count requesting punitive damages, a count alleging gross negligence, and a count alleging wrongful discharge. Subsequently we upheld the constitutionality of the Act and its damage provisions in Meech v. Hillhaven West, Inc. (1989), 238 Mont. 21, 776 P.2d 488. Following Meech the remaining count of Cecil's complaint alleged wrongful discharge under the Act. On January 9, 1990, the District Court

entered summary judgment in favor of Cardinal on Cecil's claim of wrongful discharge, and all other counts precluded by Meech. Cecil now appeals solely with respect to his claim of wrongful discharge.

In order for summary judgment to issue, the movant must demonstrate that there is no genuine issue as to all facts deemed material in light of the substantive principles entitling the movant to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Cerek v. Albertson's, Inc., (1981), 195 Mont. 409, 411, 637 P.2d 509, 511. Under the Wrongful Discharge From Employment Act a valid ground for maintaining a cause of action against a former employer is when the employee's "discharge was not for good cause and the employee had completed the employer's probationary period of employment. . . ." Section 39-2-904(2), MCA. The Act defines good cause as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." Section 39-2-903(5), MCA.

It is well-settled in the case law prior to the Act that economic conditions constitute a "legitimate business reason." This court has held that employers should not be foreclosed from "engaging in legitimate reductions in force necessary to maintain the economic vitality of the company." Flanigan v. Prudential Federal Savings and Loan Association (1986), 221 Mont. 419, 426, 720 P.2d 257, 261. Furthermore, an employer is entitled to be motivated by and serve its own legitimate business interest and must be given discretion who it will employ and retain in

6

employment. Hobbs v. Pacific Hide and Fur Depot (1989), 236 Mont. 503, 511, 771 P.2d 125, 130; Coombs v. Gamer Shoe Company (Mont. 1989), 778 P.2d 885, 887, 46 St.Rep. 1478, 1480. We have also held that summary judgment is proper where there is no genuine fact issue as to whether an employee was terminated for a legitimate business reason. Coombs, 778 P.2d at 887-888.

Here, the District Court found that because of trends in the price of crude oil there was no genuine issue of material fact that Cecil was terminated for other than legitimate business reasons. On the other hand, Cecil alleges that he was terminated without good cause, because Cardinal did not act fairly and honestly when claiming "economic necessity" or "legitimate business reason" as the reason for his termination. However, once Cardinal made a sufficient showing of no material fact issues, the burden then shifted to Cecil to raise a factual issue sufficient to show that summary judgment was improper. See Thelen v. City of Billings, 238 Mont. 82, 85, 776 P.2d 520, 522. "If the movant has met this burden, it then shifts to the non-moving party to demonstrate a genuine issue of material fact. Mere denial or speculation will not suffice, the non-moving party must show facts sufficient to raise a genuine issue." Gamble Robinson Co. v. Carousel Properties (1984), 212 Mont. 305, 312, 688 P.2d 283, 287. (Emphasis added.)

Here, Cecil did not offer any other motive or reason for his termination. He merely denied that the reasons were legitimate business reasons. And while the record might arguably show that it was possible for Cardinal to keep Cecil employed during the

decline in oil prices, this Court cannot speculate as to what Cardinal's real reasons may have been, if they were in fact not as claimed. Cecil has failed to meet his burden of raising a material fact issue sufficient to withstand a motion for summary judgment. The order of the District Court is

**AFFIRMED.**

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

8