No. 90-427

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

ROBERT G. KIZER,

Plaintiff and Respondent,

v.

SEMITOOL, INC.,
a Montana Corporation,

Defendant and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Leif B. Erickson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Debra D. Parker and Steven E. Cummings (argued),
Dana L Christensen; Murphy, Robinson, Heckathorn &
Phillips, P.C., Kalispell, Montana

For Respondent:

Daniel W. Hileman (argued); Murray & Kaufman,
Kalispell, Montana
Randall S. Ogle; Ogle & Worm, Kalispell, Montana

FILED

Filed: DEC 16 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Submitted: June 18, 1991

Decided: December 16, 1991

Justice Karla M. Gray delivered the Opinion of the Court.

The defendant, Semitool, Inc. (Semitool), appeals from a judgment entered on a jury verdict rendered in the District Court of the Eleventh Judicial District, Flathead County, in favor of the plaintiff, Robert G. Kizer (Kizer). Kizer filed suit in the District Court seeking to recover damages from Semitool based on three claims: wrongful discharge, breach of the implied covenant of good faith and fair dealing, and negligence. The jury, through the use of a general verdict form, awarded Kizer damages in the amount of $51,000. We reverse and remand.

The issues are:

1. Was Semitool's notice of appeal timely filed?

2. Did the District Court err in allowing Kizer's expert witness to render legal conclusions that Semitool breached the implied covenant of good faith and fair dealing and that Semitool's reduction in force was not legitimate?

3. Did the District Court err in instructing the jury on the issue of negligence?

4. Was there sufficient evidence to support the submission of Kizer's case to the jury?

Semitool is a manufacturer of specialized capital equipment for the semiconductor industry. Its plant and principal offices have been located near Kalispell, Montana since 1979. Semitool is a closely-held corporation with Raymon and Ladeine Thompson as its principal shareholders. Raymon Thompson also serves as president.

The semiconductor industry is highly cyclical and intensely

2

competitive; technology is continuously changing. Semitool's success is directly related to its ability to produce a state-of-the-art product and respond to the fluctuating demands of its customers. Two important measures of customer demand and, thus, Semitool's economic prospects are (1) sales booked (representing orders received for products to be manufactured by Semitool and delivered in the future); and (2) backlog (representing products ordered by customers and in the process of being manufactured). In the fall of 1986, Semitool suffered a significant down-turn in both sales booked and backlog which continued through the spring of 1987. During this period, Semitool reduced its number of employees. A total of thirty-five employees were terminated, including Kizer. Testimony at trial indicated that when Semitool's economic prospects improved after April 1987, almost all of the employees were rehired or their previous positions were filled by new first-time employees.

Kizer was employed with Semitool for nearly four years. In April 1983, he began working for Semitool as the supervisor of the polypropylene department. He was promoted two months later to supervisor of the polypropylene, welding, and electropolish departments. By 1987, Kizer held the position of fabrications manager, after having been given the additional responsibility of supervising the machine shop at Semitool.

While employed by Semitool, Kizer received numerous verbal evaluations of his job performance, all of which were favorable. He also received one written performance evaluation which was favorable to him. Kizer did not receive any unsatisfactory

3

evaluations of his job performance.

On February 16, 1987, Kizer's employment with Semitool ended. He was called into Thompson's office that day and, without any forewarning, told that his employment was terminated. According to Kizer's testimony, Thompson told him that he was being "let go" because the machine shop was operating at thirty percent less efficiency than the previous year and because he was not a "journeyman machinist."

On February 2, 1988, Kizer filed suit in the District Court seeking to recover damages from Semitool based on three claims: wrongful discharge, breach of the implied covenant of good faith and fair dealing, and negligence. The case was tried before a jury March 26 through March 29, 1990. The jury, through the use of a general verdict form, rendered a verdict in favor of Kizer and awarded damages in the amount of $51,000. Following trial, Semitool moved for judgment notwithstanding the verdict or, in the alternative, a new trial. At a hearing held on April 26, 1990, the District Court denied Semitool's post-trial motions. This appeal followed.

I

Was Semitool's notice of appeal timely filed?

Kizer contends that Semitool's notice of appeal was not timely filed and, therefore, its appeal should be dismissed. We disagree.

At the hearing on April 26, 1990, the District Court denied Semitool's post-trial motions from the bench and the Clerk of the District Court entered the court's denial into the record. Pursuant to Rule 5(a)(4), M.R.App.P., allowing three days for

4

mailing, Semitool's thirty-day period in which to file its notice of appeal expired on May 30, 1990. On May 31, 1990, Semitool filed with the District Court a motion to extend the time of filing a notice of appeal. The District Court granted the motion and Semitool filed its notice of appeal on June 8, 1990.

Rule 5(a)(5), M.R.App.P., allows the district court to extend the time for filing a notice of appeal upon a showing of excusable neglect or good cause. The request to extend the time for filing a notice of appeal must be made within thirty days after the initial thirty-day period for filing a notice of appeal has expired. Here, Semitool filed its motion to extend the time for filing a notice of appeal one day after the initial thirty-day period had expired. Apparently, it was unclear to counsel for Semitool whether the District Court had denied Semitool's post-trial motions from the bench or would be making a decision post-hearing. Under these circumstances, the District Court found that good cause existed to extend the time for filing a notice of appeal. We hold that Semitool's notice of appeal was timely filed.

II

Did the District Court err in allowing Kizer's expert witness to render legal conclusions that Semitool breached the implied covenant of good faith and fair dealing and that Semitool's reduction in force was not legitimate?

Alan Brown, an expert in employment relations, testified on behalf of Kizer at trial. On direct examination, Kizer's counsel established Brown's training and qualifications and knowledge of the facts surrounding Kizer's termination of employment. Counsel

5

then elicited the following testimony from Brown:

Q. Did you formulate any opinions in this case?

A. Yes, I did.

Q. And what are those opinions?

A. My opinion is that Bob Kizer, the Plaintiff in this case, was not treated fairly by the Defendant, Semitool.

Q. What forms the basis for your opinion that Semitool treated Mr. Kizer unfairly?

A. I guess there are five bases for my opinion. The first of these bases is the fact that when you compare the actions of Semitool, the Defendant in this case, against widely accepted standards in the employee relations field, you find that their actions weren't fair and they weren't the actions that a company normally takes when they have a reduction in force.

The second thing that I found was that in the past, Semitool, when they have had reductions in force, have done things differently and they have treated their employees much better than they have treated Mr. Kizer.

The third point that I found was that the implied covenant of good faith and fair dealing, which is found in the employer relationship, was violated by the actions of Semitool.

The fourth point that supports my opinion is the fact that when an employer has performance problems with an employee, they deal with those performance problems as opposed to terminating or firing an employee for an alleged reduction in force, when in reality, the problems lay elsewhere in the materials that I reviewed. And in my review with Mr. Kizer, I learned that in fact there were some performance problems that had existed.

And the final point, or basis for my opinion, is that the State of Montana, if you terminate an employee, the Supreme Court has said that you must--

MR. CHRISTENSEN: Your Honor, I am going to object to any testimony of what the Supreme Court says. That is commenting on the law, and that is your bailiwick.

THE COURT: I appreciate that. On the other hand, I think he is looking for standards to compare with. But I would tell you not to use the Supreme Court decision.

6

If you have some knowledge of a standard, I would allow that.

THE WITNESS: The standard in the State of Montana is that an employer, when they terminate an employee, must have a fair and honest reason for that termination. And my review indicates to me that there was, in fact, no fair and honest reason for this termination.

BY MR. OGLE:
Q. So, as I understand your answer to the last question, then there are five different points that led you to the conclusion that Mr. Kizer was not treated fairly in the situation. Is that right?

A. Yes, that is correct.

Q. Let's discuss them one at a time, then. One of your points was that the implied covenant of good faith and fair dealing applied to this case. Is that right?

A. Yes, that is correct.

. . .

Q. Did you believe it was adhered to by Semitool with regard to Bob Kizer?

MR. CHRISTENSEN: I will object to this as invading the province of the jury. They decide this question. They don't need this man telling them what he thinks they should do.

THE COURT: Well, certainly the mere fact that it goes to invading the province of the Jury does not prohibit the testimony. I am not sure where we are headed with this line. I have no problem to his setting forth facts that he found that might indicate in his opinion a violation of the covenant. But as to the ultimate conclusion, I think that is a Jury question and I will allow the Jury to resolve it.

BY MR. OGLE:
Q. I would rephrase the question, then, as to whether or not you found any facts in this particular case by the treatment of Mr. Kizer by Semitool from which you can tell in your opinion whether or not Semitool adhered to the implied covenant of good faith and fair dealing.

MR. CHRISTENSEN: Same objection. Same question.

THE COURT: Overruled.

7

THE WITNESS: In my view, I don't believe that Semitool did in fact adhere to the covenant. . . .

. . .

Q. Do you believe that the termination of Bob Kizer by Semitool was in fact a legitimate reduction in force?

MR. CHRISTENSEN: Objection; goes to the ultimate issue in the case, invades the province of the Jury and isn't helpful to them.

MR. OGLE: I believe an expert witness has a right to testify, Your Honor.

THE COURT: Again, as to allowing him to give his opinions, I will allow it. I will remind the Jury the ultimate decision is up to you folks, of course, but he may give his opinion as an expert witness.
You will be instructed later on that; you can give it such weight as you feel it entitled.

THE WITNESS: In my opinion, I don't feel it was a legitimate reduction in force.

Semitool, citing Heltborg v. Modern Machinery (1990), 244 Mont. 24, 795 P.2d 954, contends that Brown's testimony constituted improper legal conclusions on the issues of whether Semitool breached the implied covenant of good faith and fair dealing and whether its reduction of force was legitimate. It argues that Brown's testimony amounted to instructing the jury on how to decide the case. Kizer, on the other hand, contends that Brown's testimony was admissible as opinions on ultimate issues of fact in accordance with Rule 704, M.R.Evid. Kizer also contends that even if Brown's testimony constituted legal conclusions, his testimony was properly admitted by the District Court because Semitool did not make a timely and specific objection or motion to strike as required by Rule 103, M.R.Evid., and therefore, any objections to the admission of Brown's testimony were waived.

8

In <u>Heltborg</u>, this Court considered testimony from this same expert which was substantially similar to the testimony in the present case. The defendant claimed that the plaintiff's employment was terminated as part of a reduction in force for economic reasons. The plaintiff asserted that the defendant breached the covenant of good faith and fair dealing, was negligent in its reduction in force, and that the reduction in force was not legitimate.

In considering the expert testimony, we emphasized the distinction under Rule 704, M.R.Evid., between testimony on the ultimate factual issue, which is allowable, and testimony on the ultimate legal issue, which is not allowable. Rule 704, M.R.Evid., states that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The Commission Comments to Rule 704, M.R.Evid., state that "the Commission intends this rule to follow the existing Montana practice of not allowing the witness to give a legal conclusion or to apply the law to the facts in his answer."

In discussing the propriety of expert legal testimony under Rule 704, we cited our decision in Hart-Anderson v. Hauck (1988), 230 Mont. 63, 748 P.2d 937, which quoted approvingly from Marx & Co., Inc. v. Diners' Club, Inc. (2nd Cir. 1977), 550 F.2d 505, <u>cert</u>. <u>denied</u>, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977), as follows:

> "[S]uch testimony 'amounts to no more than an expression of the [witness'] general belief as to how the case should be decided.' McCormick on Evidence, § 12 at

9

26-27. The admission of such testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case. McCormick on Evidence, § 12 at 27. It is for the jury to evaluate the facts in the light of the applicable rules of law, and it is therefore erroneous for a witness to state his opinion on the law of the forum."

Heltborg, 244 Mont. at 31, 795 P.2d at 958.

We held that the expert's testimony in Heltborg was not admissible, stating:

The testimony by Mr. Alan Brown constituted a legal conclusion on the precise issue presented to the jury, that is, whether defendant had breached the covenant of good faith and fair dealing. Moreover, he was allowed to state his opinion that defendant was negligent in carrying out its reduction in force and that such reduction was not legitimate; . . . Mr. Brown's testimony was extensive, and he repeatedly stated legal conclusions which amounted to instructing the jury on how to decide the case.

Heltborg, 244 Mont. at 32, 795 P.2d at 958.

In light of our decision in Heltborg, we agree with Semitool that Brown's testimony in the present case constituted legal conclusions on the very issues to be decided by the jury and exceeded the scope of allowable expert testimony under Rule 704, M.R.Evid. Having so concluded, we must now consider whether Semitool waived its objection to this evidence.

In order to preserve an objection to the admission of evidence for purposes of appeal, the objecting party must make a timely objection or motion to strike and state its specific grounds. The objection must appear on the record. Rule 103, M.R.Evid. To be timely, the objection must be made as soon as the ground for the objection becomes apparent. McCormick on Evidence, (3rd. Ed. 1984), § 52 at p. 126. The objection is sufficiently specific if

it is accompanied by a reasonably definite statement of the grounds for the objection. McCormick on Evidence, (3rd. Ed. 1984), § 52 at p. 128. Failure to make such an objection constitutes a waiver of the right to claim error on appeal. Moore v. Hardy (1988), 230 Mont. 158, 163, 748 P.2d 477, 481. The effect of waiver is that the evidence is treated the same as any other admissible evidence.

Kizer asserts that the first objection made by Semitool to Brown's testimony was made after Brown rendered his opinions that Kizer's employment was not terminated as part of a legitimate reduction in force and that Semitool violated the implied covenant of good faith and fair dealing. He also asserts that the first objection made by Semitool related only to "commenting on the law" in response to Brown's testimony regarding what "the Supreme Court has said," rather than that counsel's question called for a legal conclusion which invaded the province of the jury. Kizer argues that Semitool's failure to make a timely and specific objection constituted a waiver of the objection and rendered the opinions, as well as the subsequent discussions regarding the opinions, admissible.

Our review of the record indicates that Semitool properly preserved its objection to Brown's testimony for purposes of appeal. After Brown's training and qualifications and knowledge of the facts surrounding Kizer's termination of employment were established, Kizer's counsel asked Brown if he had formed any opinions in this case. Brown responded that, in his opinion, Kizer "was not treated fairly by the Defendant." He further testified that there were five bases for his opinion. Bases one, two, and

11

four related to Kizer's termination of employment with respect to a legitimate reduction in force. Basis three involved the implied covenant and basis five involved what "the Supreme Court has said" which was objected to as "commenting on the law." Immediately thereafter, Kizer's counsel delved into these bases "one at a time." It was during the discussion of these bases that counsel first asked Brown to state his opinion of whether Semitool adhered to the implied covenant of good faith and fair dealing. Semitool objected to this question as "invading the province of the jury." Thereafter, counsel also asked Brown for the first time if he believed that the termination of Kizer's employment was a legitimate reduction in force. Semitool objected to this question as going to the "ultimate issue" and "invad[ing] the province of the jury."

Under these circumstances we conclude that Brown's initial testimony and the ensuing discussion, during which Semitool raised its objections, occurred in sufficient proximity in time to render Semitool's objections timely. We also conclude that Semitool's objections were sufficiently specific. This Court has previously stated that expert legal opinions invade the province of the jury. In Hart-Anderson v. Hauck (1988), 230 Mont. 63, 748 P.2d 937, the plaintiff's expert witness testified, over objection, that the defendant, State Farm Insurance Company, violated Subsections (4), (6) and (7) of § 33-18-201, MCA, (Montana's Unfair Claims Settlement Practices Act). In holding that the district court committed reversible error in admitting the testimony, we discussed the propriety of legal opinions under Rule 704, M.R.Evid., and

12

stated that "[the expert's] challenged testimony, opining that State Farm violated Subsections (4), (6) and (7) of the Act invaded the province of the jury and simply instructed the jury how to decide the case." Hart-Anderson, 230 Mont. at 72, 748 P.2d at 943, (emphasis added). Thus, Hart-Anderson, decided more than two years prior to the trial in the instant case, not only limited the scope of expert testimony but also set forth this Court's opinion that expert legal opinions were objectionable precisely because they invaded the province of the jury.

We hold that in the present case the District Court erred in allowing Brown to render legal conclusions on the very issues to be decided by the jury. We further hold that Semitool properly objected to the admission of Brown's testimony. We thus reverse and remand to the District Court for a new trial.

Notwithstanding our reversal, we will address the remaining two issues raised by Semitool for the court's guidance on retrial.

III

Did the District Court err in instructing the jury on the issue of negligence?

The District Court gave the following negligence instructions to the jury:

INSTRUCTION NO. 9

Every person is responsible for injury to the person of another, caused by his or her negligence.

Negligence is the failure to use reasonable care. Negligence may consist of action or inaction. A person is negligent if he fails to act as an ordinarily careful person would act under the circumstances.

INSTRUCTION NO. 10

13

Before you can find the defendant liable, you must find the defendant's negligence was a cause of the plaintiff's damage.

Citing Heltborg, Semitool contends that the court's instructions improperly authorized the jury to decide whether Semitool was negligent in carrying out a reduction in force by suggesting that the jury could second guess Semitool's management decision in the context of what an "ordinarily careful person" would have done "under the circumstances." It also asserts that the instructions improperly allowed the jury to find that Semitool negligently breached the implied covenant of good faith and fair dealing.

Heltborg is distinguishable from the present case in this regard. In Heltborg the challenged jury instructions read as follows:

"Instruction No. 18:

When the legal duty to act in good faith exists in the employment relationship, as it does in this case, then there is a duty imposed upon the employer to exercise reasonable care in carrying out decisions concerning employment. This means that there is a duty on the part of the employer to use reasonable care under the circumstances in carrying out its business decision-making.

Instruction No. 19:

A reduction in force can constitute a just cause for termination of employment. However, you are instructed that the employer's right to reduce its personnel does not excuse its obligation to act fairly and in good faith or to use ordinary and reasonable care in the process and manner of termination of employment."

Heltborg, 244 Mont. at 33-34, 795 P.2d at 959. In addition, a

14

special verdict form specifically directed the jury to consider whether the defendant had negligently breached the implied covenant of good faith and fair dealing.

We held that the district court improperly instructed the jury on the issue of negligence, stating that the management decision to implement a reduction in force for economic reasons is not susceptible to a negligence analysis by a jury. Heltborg, 244 Mont. at 36, 795 P.2d at 961. We also held that a breach of the implied covenant of good faith and fair dealing does not involve negligent conduct, but rather involves intentional conduct. Heltborg, 244 Mont. at 37, 795 P.2d at 962.

However, we did not hold in Heltborg that there can never be a claim for negligence in the termination of the employer-employee relationship. Indeed, in other wrongful termination cases arising, as did the instant case, prior to the Wrongful Discharge From Employment Act, this Court has recognized that negligence, as a separate and distinct cause of action, can be a basis for recovery. Flanigan v. Prudential Federal Savings & Loan (1986), 221 Mont. 419, 720 P.2d 257; Crenshaw v. Bozeman Deaconess Hospital (1984), 213 Mont. 488, 693 P.2d 487. We have held that an employer may be liable for negligence in violating its own written employment policies (Flanigan) or for failing to make a proper investigation before discharge (Crenshaw).

Here, Semitool's employee handbook was admitted into evidence. Kizer presented evidence at trial that Semitool violated its own employment policies and that it failed to make a proper investigation prior to discharge regarding Thompson's assertion

15

that Kizer was not running the machine shop efficiently. Under these circumstances, we conclude that the District Court did not err in instructing the jury on the issue of negligence.

## IV

Was there sufficient evidence to support the submission of Kizer's case to the jury?

Semitool contends that it was imperative that Kizer offer some specific motive or reason to contradict that he was laid off as part of a reduction in force for economic reasons. It argues that, having failed to do so, Kizer failed to rebut its claim that his employment was terminated out of economic necessity.

In support of its argument, Semitool cites Cecil v. Cardinal Drilling Co. (1990), 244 Mont. 405, 797 P.2d 232. In that case, the district court granted summary judgment in favor of the employer on the basis that there was no genuine issue of material fact that the plaintiff's termination of employment was for other than legitimate business reasons. In affirming summary judgment, we stated that:

> Here, Cecil did not offer any other motive or reason for his termination. He merely denied that the reasons were legitimate business reasons. And while the record might arguably show that it was possible for Cardinal to keep Cecil employed during the decline in oil prices, this Court cannot speculate as to what Cardinal's real reasons may have been, if they were in fact not as claimed. Cecil has failed to meet his burden of raising a material fact issue sufficient to withstand a motion for summary judgment.

Cecil, 244 Mont. at 410, 797 P.2d at 235.

Cecil is factually distinguishable from the present case.

16

Cecil was governed by and decided under the Wrongful Discharge From Employment Act, §§ 39-2-901, et seq., MCA. Under the Act, an employer may discharge for good cause an employee who has completed the employer's probationary period of employment. Section 39-2-904(2), MCA. The Act defines good cause as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." Section 39-2-903(5), MCA. We recognized that economic conditions constituted a legitimate business reason or good cause for dismissal and held that the employer had met its burden of demonstrating that there was no genuine issue of material fact that the plaintiff was terminated for other than legitimate business reasons. Although the plaintiff asserted that he was not terminated for a legitimate business reason, he failed to present any evidence to meet his burden of raising a material fact issue. In other words, the plaintiff's assertion that he was not terminated for legitimate business reasons was nothing more than mere denial or speculation and was insufficient to raise a genuine issue. Cecil, 244 Mont. at 409-10, 797 P.2d at 235.

On appeal from a jury verdict, the evidence in the case is viewed in a light most favorable to the prevailing party. Sizemore v. Montana Power Co. (1990), 246 Mont. 37, 48, 803 P.2d 629, 636. In contrast to Cecil, the evidence presented at trial in this case was sufficient to raise a reasonable jury issue as to whether Semitool acted with other than purely economic motives when it terminated Kizer's employment. Although it is apparent that a

17

reduction in force for economic reasons did occur, the evidence is such that the jury could legitimately infer that Kizer's termination was not part of, or motivated by the need for, this reduction in force.

Semitool asserts that Kizer's termination was a result of its pre-termination decision to eliminate his position in an effort to reduce its overhead costs. Significantly, however, Kizer was not told that his employment was being terminated as part of a company-wide reduction in force for economic reasons until after he filed the lawsuit against Semitool. According to Kizer's undisputed testimony, Thompson told him on the day his employment was terminated that he was being "let go" because the machine shop was operating at thirty percent less efficiency than the previous year and because he was not a "journeyman machinist." Thompson himself testified that he terminated Kizer's employment because of rising costs in Kizer's areas of responsibility and because Kizer lacked technical expertise at the machine shop level. Evidence at trial indicated that Kizer was frequently promoted and that he never received an unsatisfactory job performance evaluation while employed with Semitool. In addition, the evidence established that Kizer had issued memos to his supervisors offering suggestions on how to increase efficiency in the machine shop, including the suggestion to purchase a new lathe. Prior to Kizer's termination, he suggestions were apparently not acted upon. However, shortly after Kizer's termination, Semitool purchased the lathe at a cost of $86,000. In our view, the jury could have relied upon this evidence and concluded that Kizer was not terminated for purely

18

economic reasons.

In addition, the evidence established that approximately twenty-six people were laid off around the time of Kizer's termination. Of these twenty-six people, twenty-five were rehired or their positions were refilled because the employees had found other employment. The only person who was not rehired or whose position was not refilled was Kizer. Semitool argues that Kizer's management position was eliminated. However, Semitool's organizational charts showing management before and after Kizer's termination were offered into evidence. The exhibits indicated that prior to Kizer's termination there were ten management positions; at the time of trial there were eleven people filling the same areas of responsibility. Although Thompson testified that other employees had changed positions within the company in the past, he never discussed with Kizer the possibility of moving to another position. He further testified that he never requested his subordinates to keep Kizer in mind for job openings after his termination because "that would have been stepping out of line." Contrary to Thompson's testimony, Semitool's Chief Financial Officer, Larry Viano, testified that Kizer could have moved to another position and that Semitool explored that possibility. However, Viano testified that Semitool never discussed with Kizer the possibility of his moving to another position.

We hold that sufficient evidence was presented to raise a factual issue as to whether Semitool acted with other than purely economic motives when it terminated Kizer's employment. Thus, the District Court properly submitted Kizer's case to the jury.

19

To summarize our holding in this case, the District Court did not err in instructing the jury on the issue of negligence and submitting the case to the jury. The court did err, however, in allowing Kizer's expert witness to render legal conclusions that Semitool breached the implied covenant of good faith and fair dealing and that Semitool's reduction in force was not legitimate. Having no way of determining to what degree Brown's testimony influenced the jury's decision in this case, we cannot conclude that this error was harmless. We therefore reverse and remand to the District Court for a new trial.

Reversed and remanded.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur with those parts of the majority's opinion which uphold the timeliness of Semitool's notice of appeal, affirm the District Court's instructions on the issue of negligence, and conclude that there was sufficient evidence to submit the plaintiff's case to the jury.

I dissent from that part of the majority's opinion which concludes that there was a timely and appropriate objection to the testimony of Alan Brown, and which reverses the verdict in favor of the plaintiff on the basis of that objection.

In *Heltborg v. Modern Machinery* (1990), 244 Mont. 24, 795 P.2d 954, we distinguished between expert opinions which express a factual conclusion, and expert opinions which express a legal conclusion. We held that the former were admissible even when they embrace an ultimate issue of fact. *Heltborg*, 795 P.2d at 958. We held that Brown could not express his opinion that defendant had breached the covenant of good faith and fair dealing because that testimony amounted to a legal conclusion. *Heltborg*, 795 P.2d at 959.

In this case, Brown expressed what we previously characterized as a legal conclusion on three occasions. When first asked for his general opinions in this case, he expressed the opinion that plaintiff's termination was not a normal reduction in work force and that it violated the implied covenant of good faith and fair

21

dealing. There was no objection to those opinions, nor any motion to strike them. Later during that same answer the witness began to discuss decisions of this Court. That testimony was objected to on a proper basis and the witness was instructed to avoid discussing the law. He completed his answer without further discussion of the law.

Later in his testimony, he was asked specifically whether in his opinion Semitool violated the covenant of good faith, and whether their termination of the plaintiff was a legitimate reduction in force. His answers to these questions are the basis for the majority's reversal of the jury verdict in this case. The majority concludes that his answers to these questions were impermissible legal conclusions pursuant to our decision in *Heltborg*. However, neither of these questions was objected to on that basis. Both were objected to for the reason that they went to the ultimate issue in the case and invaded the province of the jury.[1]

---

[1]Prior to trial the defendant also filed a motion in limine to exclude certain opinions of Brown. However, the basis stated in that motion was not an appropriate basis for excluding the testimony. The reason given was as follows:

> [F]or the reason that said opinion is without adequate foundation, invades the province of the trier of fact, and is not helpful to the trier of fact in determining the ultimate issue involved in this case, pursuant to Rules 701 and 704, Montana Rules of Evidence.

Nowhere in the motion in limine did defendant state that Brown's opinion was objectionable because it expressed a legal conclusion.

Pursuant to Rule 704, M.R.Evid., and our previous decision in *Heltborg*, the fact that expert opinion testimony addresses the ultimate issue in the case is not a basis for excluding it. Rule 704 specifically provides:

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

We have discussed the adequacy of the kind of objection made in this case previously. In *State v. Howard* (1981), 195 Mont. 400, 404, 637 P.2d 15, 17, we stated in language clearly relevant to this case:

> The objection made by defense counsel to the question calling for the doctor's opinion on intent was that it "invades the province of the jury." *This objection is not adequate to justify exclusion of the testimony*. It is merely another way of saying that the testimony embraces an ultimate issue to be decided by the jury. Rule 704 of the Montana Rules of Evidence provides:
>
> > "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."
>
> This rule reflects long-established law in Montana. *State v. Petko* (1978), 177 Mont. 229, 581 P.2d 425; *McGuire v. Nelson* (1975), 167 Mont. 188, 536 P.2d 768; *Rude v. Neal* (1974), 165 Mont. 520, 530 P.2d 428; *State v. Campbell* (1965), 146 Mont. 251, 405 P.2d 978; *State v. Shannon* (1933), 95 Mont. 280, 26 P.2d 360; *Kelley v. John R. Daily Co.* (1919), 56 Mont. 63, 181 P. 326. Thus, the fact that the doctor's opinion on intent went to an ultimate issue is not a basis for its exclusion. [Emphasis added.]

The fact that Brown's testimony was not objected to for an appropriate reason is significant because Rule 103(a)(1), M.R.Evid., provides as follows:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
> (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context
> . . . .

By requiring that the specific ground for the objection be stated, it is implicit from Rule 103 that the objection must correctly state the reason for which the testimony objected to is inadmissible.

Rule 103 is extremely important to attorney practitioners and trial judges in the district courts. Its purpose is obvious. It is simply not fair to reverse a verdict for either party based upon error which was not brought to the attention of the district judge and the other party. For one thing, the district judge should have an opportunity to consider the objection in light of the proper reason for the objection. The rule presumes that if he has that opportunity he is more likely to make a correct ruling.

Just as importantly, the party offering the evidence should be given the opportunity to consider whether the evidence was inadmissible for a proper reason, and should have the option of withdrawing the evidence or restating the question to avoid the possibility of error. Neither the District Judge nor the

plaintiff's attorney were given that opportunity in this case because the defendant's objection to the expert's testimony did not identify an appropriate basis for excluding the testimony.

In concluding that the defendant's objection was properly stated in this case, the majority rationalizes that expert legal opinions invade the province of the jury. However, the majority's opinion demonstrates a lack of understanding about the division of responsibility between juries and judges.

Juries arrive at factual conclusions, not legal conclusions. Judges arrive at legal conclusions and instruct the jury on the law. The only "province of the jury" was to resolve the facts in this case. Rule 704 permits testimony from a qualified expert regarding the ultimate factual issue. Therefore, an objection which states that the plaintiff's question invades the ultimate province of the jury does not state a proper basis for excluding the expert testimony.

What the majority has done in this case is extremely unfair to the trial court and the plaintiff and will create uncertainty in all future trials because of the possibility that legal issues can be raised and scrutinized on appeal that were never raised during trial. No party can be assured that he or she prevailed based on those issues that were addressed during the trial court proceedings.

I conclude that there was not a proper objection to Brown's testimony. For that reason, any objection was waived and the verdict for the plaintiff should be affirmed.

_____
                 Justice

We concur in the foregoing concurring and dissenting opinion of Justice Trieweiler.

_____

_____
                 Justices

26