No. 98-528

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 196N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

PAUL THUNDER BELCOURT,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

Honorable John W. Larson, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Edmund F. Sheehy, Cannon & Sheehy, Helena, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Micheal S. Wellenstein,

Assistant Attorney General, Helena, Montana

Fred R. Van Valkenburg, County Attorney, Missoula, Montana

_____

Submitted on Briefs: July 22, 1999

Decided: August 19, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

1. ¶Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

2. ¶Paul Thunder Belcourt appeals his conviction before the Fourth Judicial District Court, Missoula County, of the offenses of sexual intercourse without consent and intimidation. We affirm.

## ISSUES

1. ¶ 1. Did the District Court err in denying Belcourt's request for instructions on the lesser included offense of misdemeanor sexual assault on the charge of sexual intercourse without consent?

2. ¶2. Did the District Court err in denying Belcourt's request for instructions on the lesser included offense of misdemeanor assault on the charge of intimidation?

3. ¶3. Did the District Court err in allowing an emergency room nurse to testify regarding whether the victim in this case demonstrated behavior consistent with a person who had been raped?

4. ¶4. Did the District Court commit plain error by admitting evidence of the knife and sap Belcourt carried on the evening of the offenses but did not use in the commission of the offenses?

5. ¶5. Is there sufficient evidence to support Belcourt's conviction for intimidation?

## BACKGROUND

1. ¶The victim in this case, S.V., is Belcourt's former girlfriend. The couple dated from the summer of 1997 to the following November. Although the relationship between them had deteriorated, Belcourt and S.V. continued to see each other periodically after they discontinued dating. One such meeting occurred on December 25, 1997, and resulted in Belcourt physically abusing S.V. for the first time. The couple had no further contact until the morning of December 30, 1997, when the events relevant to this appeal occurred.

2. ¶S.V. paged Belcourt several times on December 29, 1997, attempting to discuss with him his reasons for hitting her on December 25, 1997. At approximately 4:00 a.m., S.V. received a telephone call from one of Belcourt's friends, advising her that Belcourt was drunk and on the way to her house. Belcourt arrived at S.V.'s almost immediately thereafter.

3. ¶ According to his usual custom, Belcourt was carrying a 9 millimeter pistol, a boot knife and a black leather sap on his person that evening. Upon entering S.V.'s home, Belcourt gave her the pistol, which was loaded, and S.V. removed the cartridge from the weapon.

4. ¶The couple then talked for awhile on S.V.'s couch before engaging in vaginal and anal sexual intercourse, to which S.V. consented. Following this, Belcourt requested that S.V. perform oral sex on him, and she refused. Belcourt then forced S.V. to perform oral sex on him.

5. ¶Subsequently, S.V. went to her bedroom to get dressed and use the bathroom. She attempted to call one of Belcourt's friends to come get him. The friend, however, did not answer, and S.V. left a message on his answering machine. Belcourt took the phone from S.V. and threw it down the hallway.

6. ¶S.V. next went into her bedroom to lie down. Belcourt followed S.V. into the bedroom, where he forced her to have vaginal sexual intercourse with him. During this encounter, S.V. began screaming and Belcourt started hitting and then choking her. Belcourt left S.V.'s bedroom and returned to the living room. At some point, Belcourt replaced the cartridge in his 9 millimeter pistol and got dressed.

7. ¶At trial, S.V. testified that she wanted to leave her home with her infant son but was too afraid to attempt leaving by the door in the living room where Belcourt was sitting and so remained in her bedroom. Shortly thereafter, S.V. either received or placed another phone call from a telephone in her bedroom. Hearing the call, Belcourt returned to the bedroom and tore the telephone out of the wall.

8. ¶Shortly thereafter, Belcourt decided to leave. S.V. testified that before leaving her residence, Belcourt threatened her not to call the police or he would kill her and not to "put her friends on him" or he would "shoot his way through."

9. ¶Once Belcourt had gone, S.V. removed herself and her son to her mother's house a few houses away. S.V.'s mother called 911 and the Missoula County Sheriff's Department responded to the call. Police eventually found Belcourt sleeping in the back of a friend's car a few blocks away. The pistol, knife, and sap were found hidden under the steps to the friend's house where Belcourt was found.

10. ¶Belcourt was arrested and charged with the offenses of sexual intercourse without consent and intimidation. He was tried by a jury and convicted on both charges.

This appeal follows.

## DISCUSSION

1. ¶ 1. Did the District Court err in denying Belcourt's request for instructions on the lesser included offense of misdemeanor sexual assault on the charge of sexual intercourse without consent?

2. ¶Belcourt argues that the District Court erred in refusing his request for jury instructions on the lesser included offense of misdemeanor sexual assault on the charge of sexual intercourse without consent. At trial, Belcourt testified that all of the sexual intercourse between S.V. and himself during the morning of December 30, 1997, was consensual and that the only thing to which S.V. protested was the infliction of several "hickeys" on her person. Based on this evidence, Belcourt argues, a rational jury could have found him guilty of misdemeanor sexual assault in inflicting the "hickeys" but not guilty of sexual intercourse without consent, and that the District Court therefore improperly rejected his request for instructions on the lesser included offense.

3. ¶We review jury instructions in a criminal case to determine if the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Robbins*, 1998 MT 297, ¶ 27, 292 Mont. 23, ¶ 27, 971 P.2d 359, ¶ 27. As a basic rule, trial courts are required to instruct a jury on every issue or theory that is supported by the evidence. *Robbins*, ¶ 28. Upon request, a criminal defendant is entitled to a lesser included offense instruction if any evidence exists in the record that would allow the jury to rationally find the defendant guilty of the lesser but not the greater offense. *Robbins*, ¶ 28.

4. ¶Under § 45-5-502, MCA, a person who knowingly subjects another person to any sexual contact without consent commits the offense of sexual assault. The evidence in this case does not entitle Belcourt to an instruction on the lesser included offense of sexual assault, because Belcourt's claim that all of the sexual intercourse between S.V. and himself was consensual, if believed, would have precluded a conviction for sexual assault as well as a conviction for sexual intercourse without consent. An instruction on a lesser included offense is not necessary when the defense's evidence, if believed, would require a complete acquittal. *State v. Schmalz*, 1998 MT 210, ¶ 23, 290 Mont. 420, ¶ 23, 964 P.2d 763, ¶ 23. We hold therefore that the District Court did not err in refusing Belcourt's request for jury instructions on the lesser included offense of misdemeanor sexual assault.

5. ¶2. Did the District Court err in denying Belcourt's request for jury instructions on

the lesser included offense of misdemeanor assault on the charge of intimidation?

6. ¶At trial, Belcourt testified that he did not threaten to kill S.V. if she reported him to the police, but he did admit to slapping and choking her prior to leaving her residence. Belcourt argues that this testimony, if believed, supports a conviction for misdemeanor assault for causing S.V. to be in reasonable apprehension of bodily injury, but does not support a conviction for intimidation, because he made no threat of bodily injury.

7. ¶Belcourt's admitted actions in slapping and choking S.V. did not constitute part of the criminal conduct giving rise to Belcourt's intimidation charge and were not alleged in the Information as grounds to support that charge. Moreover, Belcourt's argument that the District Court erred in not permitting his offered instruction is premised on the assumption that the offense of assault constitutes a lesser included offense to the charge of intimidation. However, Belcourt provides no reasoning or authority with which to support such an assumption.

8. ¶This failure is fatal and, without more, is sufficient cause for us to decline to address the issue. It is not this Court's obligation to formulate arguments or locate authorities for the parties in support of their positions on appeal. *See Johansen v. State, Dept. of Natural Resources*, 1998 MT 51, ¶ 24, 288 Mont. 39, ¶ 24, 955 P.2d 653, ¶ 24. We therefore hold that the District Court did not err in refusing Belcourt's proposed jury instruction on the lesser included offense of assault on the charge of intimidation.

9. ¶3. Did the District Court err in allowing an emergency room nurse to testify regarding whether the victim in this case demonstrated behavior consistent with a person who had been raped?

10. ¶At trial, the District Court allowed the State to present the testimony of Linda Longacre, the registered nurse who examined S.V. in the emergency room of a local hospital after the events of December 30, 1997. Part of this testimony included whether, in Longacre's opinion, S.V.'s presentation and demeanor during this examination was consistent with that of a person who had been subjected to nonconsensual sexual intercourse.

11. ¶Belcourt argues that this testimony involved the witness's opinion with regard to the credibility of the victim of this case, and was therefore improperly allowed pursuant to *State v. Hanson* (1997), 283 Mont. 316, 323, 940 P.2d 1166, 1170. The State responds that this issue was not properly preserved for appeal because Belcourt failed to object to the introduction of this testimony on those grounds at trial. We agree with the State.

12. ¶The record reveals that Belcourt objected to the introduction of Longacre's opinion

as to the presentation of S.V. at the time of her examination based on Longacre's lack of qualifications to render such an opinion. The District Court sustained the objection on those grounds and permitted the State to lay more foundation with regard to the witness's qualifications. The State did so, and the testimony was admitted over Belcourt's objection.

13. ¶Under Rule 103(a)(1), M.R.Evid., in order to preserve an objection to the admission of evidence for purposes of appeal, the objecting party must make a timely objection and state specific grounds for the objection. To be timely, the objection must be made as soon as the grounds for the objection become apparent. *Kizer v. Semitool, Inc.* (1991), 251 Mont. 199, 207, 824 P.2d 229, 234 (citing McCormick on Evidence, § 52 at p. 126 (3d Ed. 1984)). An objection to the introduction of evidence is sufficiently specific if it is accompanied by a reasonably definite statement of the grounds for the objection. *Kizer*, 251 Mont. at 207, 824 P.2d at 234. Failure to make a timely and specific objection constitutes a waiver of the right to claim error on appeal and results in the evidence being treated the same as any other admissible evidence. *Kizer.*, 251 Mont. at 207, 824 P.2d at 234. We hold that Belcourt's failure to object to this testimony on the grounds that he now asserts on appeal precludes further review of this issue by the Court.

14. ¶4. Did the District Court commit plain error by admitting evidence of the knife and sap Belcourt carried on the evening of the offenses but did not use in the commission of the offenses?

15. ¶At trial, the State introduced evidence of the knife and sap carried by Belcourt on the night of December 30, 1997, and recovered by law enforcement officers at the time of his arrest. Belcourt argues that the introduction of these items infringed upon his right to a fair trial because they were not relevant to the charges for which he was tried and were by their very nature prejudicial in the eyes of the jury. Although Belcourt concedes that the introduction of these items was not objected to at trial, he nevertheless asserts that his conviction should be overturned as a result of the introduction of these items under the plain error doctrine of appellate review.

16. ¶The State responds that the doctrine of plain error review is not applicable in this case because Belcourt has failed to demonstrate any fundamental constitutional right implicated by the State's introduction of the knife and sap into evidence at trial. Rather, the State contends, Belcourt's argument is essentially one of relevancy under the rules of evidence and is therefore not entitled to appellate review absent a timely and specific objection to that evidence at trial. We agree.

17. ¶In *State v. Finley* (1996), 276 Mont. 126, 137, 915 P.2d 208, 215, this Court stated:

Given the history of our application of common law plain error review and application of § 46-20-701(2), MCA, in criminal cases, it is appropriate and necessary that we articulate an understandable rationale and rule for this and future cases. While we acknowledge the constraints of § 46-20-701(2), MCA, we also recognize our inherent power and paramount obligation to interpret Montana's Constitution and to protect the various rights set forth in that document. Accordingly, we hold that this Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made and notwithstanding the inapplicability of the § 46-20-701(2), MCA, criteria, where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process . . . . Moreover, given the legislature's obvious intention to restrict the use of plain error review by its enactment of § 46-20-701(2), MCA, we will henceforth use our inherent power of common law plain error review sparingly, on a case-by-case basis, and we will invoke that doctrine only in the class of cases aforementioned. In so doing, we reemphasize the necessity for contemporaneous objections to claimed error, and we caution counsel that, except in the class of cases mentioned, the provisions of § 46-20-701, MCA, will be applied in the absence of contemporaneous objection.

1. ¶ Our review of the record reveals no fundamental constitutional right which was implicated by the introduction of the knife and sap into evidence. The plain error doctrine is therefore not applicable under the facts of this case. We decline to address this issue further on grounds that it was not properly preserved for appeal by a timely and specific objection at trial.
2. ¶5. Is there sufficient evidence to support Belcourt's conviction for intimidation?
3. ¶We review the sufficiency of the evidence to support a jury verdict in a criminal case to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Lantis*, 1998 MT 172, ¶ 32, 289 Mont. 480, ¶ 32, 962 P.2d 1169, ¶ 32.
4. ¶Section 45-5-203(1), MCA, defines the offense of intimidation as follows:

A person commits the offense of intimidation when, with the purpose to cause another to perform or to omit the performance of any act, he communicates to another, under circumstances which reasonably tend to produce a fear that it will be carried out, a threat to perform without lawful authority any of the following acts:

(a) inflict physical harm on the person threatened or any other person;

(b) subject any person to physical confinement or restraint; or

(c) commit any felony.

1. ¶Belcourt argues that there is insufficient evidence to support his conviction for intimidation because the evidence at trial demonstrated that he did not threaten S.V. under circumstances which reasonably tended to produce a fear in her that the threat would be carried out. More particularly, Belcourt argues that it was S.V.'s testimony at trial that on December 30, 1997, she did not believe that Belcourt would really kill her and that as of the time of trial she was not afraid of him.

2. ¶We find this argument unpersuasive. S.V.'s statements to law enforcement officers on the morning of Belcourt's arrest indicate that S.V. had been afraid to report Belcourt to the authorities for fear of what he might do to her. Prior to trial, S.V. mailed a letter to Belcourt in jail in which she contradicted her earlier claims and stated that she did not believe that Belcourt would kill her if she called the police on him. However, at trial, S.V. testified that she did, in fact, believe on December 30, 1997, that Belcourt would try to kill her if she reported him to the authorities and that her statements in the letter to Belcourt were not true.

3. ¶Although S.V.'s testimony with regard to her state of mind on the evening of December 30, 1997, was somewhat contradictory, additional evidence presented at trial supports the jury's finding that S.V. was in reasonable fear that Belcourt would carry out his threat against her. This evidence included the testimony of S.V.'s mother and members of the sheriff's department who conducted the initial interview with S.V., that S.V. appeared frightened and was reluctant to contact or talk to law enforcement officials because of her fear of Belcourt and what he might do to her.

4. ¶The jury's findings on this issue were dependent upon the weight and credibility to be accorded to the evidence before them. Such a determination is exclusively within the province of the finder of fact, and we will not disturb these findings on appeal. *See State v. Flack* (1993), 260 Mont. 181, 188, 860 P.2d 89, 94. We therefore hold that there was sufficient evidence to support Belcourt's conviction of intimidation.

5. ¶Affirmed.

/S/ J. A. TURNAGE


We concur:


/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER